# EXHIBIT A

Beth G. Baldinger, Esq.
Matthew R. Mendelsohn, Esq.
Cory J. Rothbort, Esq.
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff

Joshua F. McMahon
**LAW OFFICES OF JOSHUA F. MCMAHON, LLC**
123 South Avenue East
Second Floor
Westfield, New Jersey 07090
P: (908) 233-4840
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YASMINE COELLO,<br><br>            Plaintiff,<br><br>vs.<br><br>LOUIS M.J. DiLeo;<br>RICHARD J. GERBOUNKA, Mayor<br>CITY OF LINDEN;<br>NICHOLAS P. SCUTARI; KATHLEEN<br>ESTABROOKS; KATHLEEN ESTABROOKS,<br>P.C.; JOHN DOE(S) 1-10; and ABC ENTITIES 1-<br>10.<br><br>            Defendants. | CIVIL ACTION NO.: 2:20-cv-1682-SDW-LDW<br><br><br>**FIRST AMENDED COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, Yasmine Coello, a resident of 146 West Roselle Ave., Roselle Park, Union County, New Jersey, by way of complaint against defendants, upon information and belief, hereby says:

## PRELIMINARY STATEMENT

1.      Plaintiff Yasmine Coello ("Coello") was wrongfully convicted and unjustly sentenced to thirty (30) days in prison as a direct and proximate result of the improper conduct of the defendants named herein.

## PARTIES

2.      At all relevant times, Coello was a resident of the City of Roselle Park, County of Union, State of New Jersey.

3.      At all relevant times, defendant Louis M.J. DiLeo ("DiLeo") was a duly appointed and acting Municipal Court Judge for the City of Linden, City of Linden Municipal Court, Union County, New Jersey and acting under color of law. DiLeo is sued herein in both his official and individual capacities.

4.      At all relevant times, defendant Nicholas P. Scutari ("Scutari") was a duly appointed and acting Municipal Prosecutor for the City of Linden, City of Linden Municipal Court, Union County, New Jersey and acting under color of law. Scutari is sued herein in both his official and individual capacities.

5.      At all relevant times, Defendant, City of Linden ("Linden City") was and is a duly formed municipal entity authorized and operating under the laws of the State of New Jersey, by and through the Linden City Council, including under the governance and direction of the defendant, Richard J. Gerbounka ("Gerbounka") who was duly elected and serving as the Mayor of the City of Linden.

6.      At all relevant times, Gerbounka was the Mayor of the City of Linden and acting under color of law. Gerbounka is sued herein in both his official and individual capacities.

2

7.    At all relevant times, Linden City, Linden City Council and Mayor Gerbounka were responsible for enacting and enforcing policies, procedures and protocols; for oversight and supervision of Linden Municipal Court, as well as defendants DiLeo and Scutari.

8.    At all relevant times, defendant Kathleen Estabrooks ("Estabrooks") was a duly licensed attorney authorized to practice law before the Courts of the State of New Jersey with her principle place of business located at 524 South Avenue East, Cranford, County of Union, New Jersey.

9.    At certain times, Estabrooks was acting as the appointed prosecutor of the City of Linden and accordingly acting under color of law for which she is sued in her official and individual capacities.

10.    At all relevant times, defendant Kathleen Estabrooks, P.C., was and is a duly formed professional corporation of the State of New Jersey providing legal services by and through its principle, agent and/or employee Estabrooks with its principle place of business located at 524 South Avenue East, Cranford, County of Union, New Jersey.

11.    At all relevant times, defendants John Does 1 through 10 (fictitious designation for one or more individuals currently whose identities are currently unknown) ("John Does") were appointees, agents, servants, and/or employees of the defendants, City of Linden and/or Kathleen Estabrooks, P.C. and were acting under color of law.

12.    At all relevant times, defendants ABC Entities 1 through 10 (fictitious designation for one or more departments, agencies or divisions of the City of Linden, and/or private entities whose identities are currently unknown) ("ABC Entities") were responsible for the City of Linden, Linden Municipal Court, DiLeo, Scutari, Estabrooks, Kathleen Estabrooks, P.C., and/or John Does 1-10 and were acting under color of law.

3

## JURISDICTION

13.     This Court has jurisdiction pursuant to Title 28 of the United States Code, Section 1331, and Title 42 of the United States Code, Sections 1983.

14.     Venue is properly laid in the United States District Court of the District of New Jersey pursuant to Title 28 United States Code Section 1391(b) in that all of the acts complained of herein occurred in the district and that the defendants are citizens of, reside in, or are public entities of the State of New Jersey and domiciled within this district.

15.     The matter in controversy herein involves an amount in excess of $75,000 (Seventy-Five Thousand Dollars) exclusive of interest.

16.     This Court has supplemental jurisdiction over plaintiff's State law claims pursuant to 28 U.S.C. §1367.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**I.     February 5, 2007 Municipal Court Hearing Led to Dismissal of the Citizen's Complaint Against Coello**

17.     On February 5, 2007, Coello appeared before Municipal Judge DeAngelo, in the Linden Municipal Court for her first appearance as defendant in the matter of State v. Coello (Linden Municipal Court Complaint No.: SC 2007-007130) which was initiated by a Citizen's Complaint.

18.     The aforementioned Citizen's Complaint was filed on January 17, 2007 by complainant, Shirley Messina ("Messina"), who alleged that Coello committed a petty disorderly persons offense of Harassment, N.J.S.A. 2C:33-4(a).   The alleged offense of harassment occurred during an alleged incident of January 9, 2007 involving Coello, Messina and David Figueroa ("Figueroa").

4

19. A finding of probable cause was not made prior to the initiation of criminal proceedings against Coello.

20. At the time of aforementioned alleged January 9, 2007 incident, Coello was in a dating relationship with Figueroa. Previously, Figueroa was in a dating relationship with Messina and they had one child together. Figueroa and Messina's dating relationship ended prior to the January 9, 2007 incident.

21. At the time of the aforementioned February 5, 2007 Municipal Court hearing on the Citizen's Complaint, both Coello and Messina appeared without legal counsel. Furthermore, Coello entered a plea of "Not Guilty" and the charges were dismissed.

## II. Submission and Approval of a Deficient "Storm Affidavit" Permitting Estabrooks to Prosecute the Citizen's Complaint in Linden Municipal Court

22. For reasons presently unknown, the aforesaid Citizen's Complaint and harassment charges against Coello were subsequently reinstated in Linden Municipal Court.

23. On or about February 26, 2007, Estabrooks submitted an affidavit -- pursuant to R. 7:8-7(b), also known as a "Storm Affidavit" -- to Linden Municipal Court and/or Judge DiLeo seeking appointment to serve as the acting prosecutor of the Civil Complaint in the matter of State v. Coello. (Annexed hereto as **Exhibit A** is a copy of Estabrooks' "Storm Affidavit")

24. At the time Estabrooks submitted her "Storm Affidavit" dated February 26, 2007 to serve as acting prosecutor in the matter of State v. Coello, Estabrooks was simultaneously representing Messina in other civil actions against Figueroa, and Estabrooks continued to do so throughout the pendency and actions taken in connection with this Citizen's Complaint, including but not limited to those filed in the Superior Court of Union County, Family Court (Docket Nos. UNN-FD-20-528-97; UNN-FV-20-2122-99 and UNN-FV-20-2127-00) ("Family Court Proceedings");

5

25.    Estabrooks' aforesaid "Storm Affidavit" was governed by New Jersey Court Rule

7:8-7(b) which provided as follows:

> *(b) Appearance for the Prosecution.*
>
> *The municipal prosecutor, municipal attorney, Attorney General, county prosecutor, or county counsel, as the case may be, may appear in any municipal court in any action on behalf of the State and conduct the prosecution either on the court's request or on the request of the respective public official. The court may also, in its discretion and in the interest of justice, direct the municipal prosecutor to represent the State.* **The court may permit an attorney to appear as a private prosecutor to represent the State in cases involving cross-complaints. Such private prosecutors may be permitted to appear on behalf of the State only if the court has first reviewed the private prosecutor's motion to so appear and an accompanying certification submitted on a form approved by the Administrative Director of the Courts. The court may grant the private prosecutor's application to appear if it is satisfied that a potential for conflict exists for the municipal prosecutor due to the nature of the charges set forth in the cross-complaints. The court shall place such a finding on the record. (Emphasis added).**

26.    Pursuant to New Jersey Court Rule 7:8-7(b) an attorney seeking to be appointed

as a private prosecutor was required to execute the Certification Form approved by the

Administrative Director of the Courts. (Annexed hereto as **Exhibit B** is a true copy of the Storm

Certification Form) Accordingly, Estabrooks was required to provide all of the information

requested in the Certification Form, and attest under oath that the information was truthful and

complete, including as detailed below:

### RULE 7:8-7(b) CERTIFICATION
### APPLICATION FOR APPOINTMENT AS PRIVATE PROSECUTOR

> *1. (Please circle the applicable letter). The complaining witness is (a) an individual, (b) a business (please describe):*
> _____, *or (c) an entity with its own police department (please describe):*_____

6

2. There is no actual conflict of interest arising from my representation of, and fee arrangement with, the complaining witness. Check if correct. [ ] If not, please explain:

_____.

3. The municipal prosecutor has elected not to conduct the prosecution. Check if correct. [ ] If not, please explain:

_____.

4. The defendant is or is expected to be represented by counsel.
[ ] Yes [ ] No [ ] Unknown. Notice has been given to defendant's attorney.
[ ] Yes [ ] No

5. There is no civil litigation, existing or anticipated, between the complaining witness and the defendant concerning the same or similar facts as are contained in the complaint. In the event of such civil litigation, I have informed the complaining witness that neither I nor any member of my firm will undertake the complaining witness' representation in that matter.
Check if correct. [ ] If not, please explain:

_____

6. There are no other facts that could reasonably affect the impartiality of the private prosecutor and the fairness of the proceedings or otherwise create an appearance of impropriety. Check if correct. [ ] If not, please explain:

_____

Comments:

_____
_____

Please attached additional sheets, if necessary.

CERTIFICAITON IN LIEU OF OATH

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Name of Applicant

27.    Estabrooks' "<u>Storm</u> Affidavit", as submitted on February 26, 2007, was facially deficient and failed to comport with the requirements of New Jersey Court Rule 7:8-7(b), including but not limited to the following:

      a. Estabrooks failed to certify that the municipal prosecutor declined to prosecute.

      b. Estabrooks never obtained, or made any attempts to obtain, confirmation from the municipal prosecutor that they were declining to prosecute Coello.

      c. Estabrooks knew that there was no cross-complaint filed by Coello against Estabrook's client, Messina.

      d. Estabrooks failed to disclose that facts which could reasonably affect her impartiality as the private prosecutor, including her representation at that time of Messina in separate matters involving Coello's then-boyfriend, Figueroa, including but not limited UNN-FD-20-528-97; UNN-FV-20-2122-99 and UNN-FV-20-2127-00.

28.    Accordingly, there was a lack of compliance with critical requirements under New Jersey Court Rule 7:8-7(b) and no lawful basis to appoint Estabrooks as the private prosecutor.

29.    Estabrooks' "<u>Storm</u> Affidavit" was facially misleading and inaccurate as she certified "that there were no other facts which could reasonably affect her impartiality as the private prosecutor" (See, **Exhibit A,** "<u>Storm</u> Affidavit", No. 6), when in fact Estabrooks represented Messina in the aforementioned Family Court proceedings involving Figueroa -- Coello's boyfriend. Estabrooks represented Messina in these Family Court proceedings both before and after submission of the February 26, 2007 "<u>Storm</u> Affidavit" which she knew or should have known would affect her impartiality to serve as a private prosecutor and/or would provide Messina with an advantage in the Family Court actions, and/or gave rise to conflict of interest and appearance of impropriety.

30.     Despite the aforesaid errors and omissions on the "Storm Affidavit", DiLeo unlawfully transferred the authority of the prosecutor to Estabrooks to serve as the acting prosecutor of Messina's Citizen's Complaint in the matter of State v. Coello.

31.     Moreover, upon information and belief, there is no record that DiLeo made the requisite findings, nor placed them on the record in order to approve Estabrooks' "Storm Affidavit" in violation of New Jersey Court Rule 7:8-7(b).

32.     Estabrooks subsequently utilized the criminal prosecution, conviction and incarceration of Coello to the benefit of her client, Messina, in connection with aforementioned Family Court matters.

## III.     March 6, 2007 Trial of Citizen's Complaint in Linden Municipal Court

33.     On March 6, 2007, DiLeo presided over the trial in the matter of State v. Coello, SC 2007-007130, with Estabrooks serving as the acting prosecutor.

34.     At the request of Estabrooks, over the objection of Coello's counsel, DiLeo had Coello removed from the courtroom while the prosecution's witnesses testified, thus depriving Coello of her constitutional right to confront witnesses as protected by the 5th Amendment of the U.S. Constitution and New Jersey Constitution, the right to effective counsel as protected by the 6th Amendment of the U.S. Constitution and New Jersey Constitution and other rights to due process under the   U.S. Constitution and New Jersey Constitution.

35.     While Coello elected to take the stand in her own defense, during Estabrook's cross-examination of Coello, DiLeo interrupted and also cross-examined Coello.

36.     While Estabrooks served as the acting prosecutor, she nevertheless had her then client Messina, sit next to her at counsel table throughout the trial.

37.     At the conclusion of the trial on March 6, 2007, DiLeo found Coello guilty of the petty disorderly persons offense of Harassment pursuant to N.J.S.A. 2C:33-4(a) and sentenced her to a $300.00 fine, $34.00 in court costs and thirty (30) days in jail in the Union County jail. The jail sentence was suspended on the condition that Coello attend twenty-six (26) weeks of anger management counseling with no specific deadline imposed for competition of the counseling.

## IV.     January 16, 2008 Hearing Led to Imprisonment

38.     On January 16, 2008, DiLeo presided as judge in a post-trial hearing in the matter of State v. Coello, SC 2007-007130. According to DiLeo, this hearing was held, and Ms. Coello was required to appear, because he:

> "received a letter from Ms. Estabrooks dated January 7, 2008 which says: 'Dear Judge DiLeo . . . defendant's completion of anger management which was ordered by the Court following her conviction in the above noted matter. I did not receive a reply. My client, Ms. Messina, has been forced to file another complaint against Ms. Coello for assault. Please see attached photo. The assault took place in the Township of Clark. Please advise if Ms. Coello completed the anger management course of twenty-six weeks as sentenced by Your Honor'."

39.     On January 16, 2008, Coello appeared as directed, but without legal representation, before DiLeo in Linden Municipal Court.

40.     On January 16, 2008, Estabrooks appeared at this hearing. Although she previously appeared in this matter as the acting prosecutor, Estabrooks now entered her appearance as legal counsel for the Complainant, Messina.

41.     On January 16, 2008, Scutari did not appear as the prosecutor and there was no other municipal prosecutor present for this hearing.

Case 2:20-cv-01682-SDW-LDW   Document 27-4   Filed 07/21/20   Page 12 of 91 PageID:
625
Case 2:20-cv-01682-SDW-LDW   Document 23   Filed 07/01/20   Page 11 of 90 PageID: 489

42.     On January 16, 2008, as Estabrooks was not appearing as the acting prosecutor, and no other prosecutor was present for this hearing, DiLeo assumed the role of Prosecutor, acted as the prosecutor and engaged in extra-judicial and/or ultra vires actions.

43.     At the hearing of January 16, 2008, DiLeo acknowledged receipt of a letter from the Abundant Life Worship Center confirming that Coello had completed 20.75 hours of anger management counseling. DiLeo also recited the procedural history in this matter, as set forth in the court record stating the following:

a.  Coello was arraigned on February 5, 2007

b.  Coello appeared in Court on February 28, 2007 and applied for a public defender, which request was denied by DiLeo.

c.  Coello was represented by Maria Velez, Esq. as confirmed by a letter of representation submitted to the Court on March 6, 2007.

d.  On March 6, 2007, Coello agreed to enroll in the Trinitas Hospital Anger Management program for 26 weeks and to return to Court on April 10, 2007.

e.  DiLeo agreed to allow Coello to complete her anger management counseling with Abundant Life Worship Center (rather than Trinitas Hospital).

f.  For unspecified reasons, a hearing was not scheduled or conducted on April 10, 2007.

g.  Coello returned to Court on April 24, 2007 and the matter was adjourned by DiLeo to May 23, 2007

h.  On May 23, 2007, Coello appeared in Court and represented that she had attended her anger management counseling pursuant to the thirty-day suspended jail sentence DiLeo had imposed. DiLeo instructed Coello to continue and conclude her anger management counseling.

44.     At no point during this hearing of January 16, 2008 did DiLeo inquire as to the status of Coello's counsel, Maria Velez, Esq. ("Velez") despite knowing Velez represented Coello. In so doing, DiLeo failed to perform a "searching inquiry" concerning Coello's prospective waiver of her right to counsel as required by State v. Crisfali, 128 N.J. 499 (1992), nor did he find on the

11

Case 2:20-cv-01682-SDW-LDW   Document 27-4   Filed 07/21/20   Page 13 of 91 PageID:
626
Case 2:20-cv-01682-SDW-LDW   Document 23   Filed 07/01/20   Page 12 of 90 PageID: 490

record that the waiver of the right to counsel was knowing and intelligent as required by NJ Court Rule 7:6-2(a)(1). Instead, on January 16, 2008, DiLeo forced Coello to appear and process with the post-trial hearing without being afforded an opportunity to have legal representation present.

45.     Coello explained to the Court she had not completed the remaining few weeks of anger management counseling as of that time because she had recently obtained new employment which presented scheduling issues. A pastor from the Abundant Life Worship Center also appeared at this hearing to vouch for Coello's substantial compliance with the anger management program.

46.     During this hearing, Estabrooks, unprompted, urged DiLeo to find Coello in violation of the sentence and to immediately send Coello to jail.

47.     In response to Estabrooks' request to incarcerate Coello, the pastor told DiLeo that sending Coello to jail was unnecessary. In response, DiLeo told the pastor to "have a seat," effectively precluding the pastor's input.

48.     DiLeo then ordered that the "old term was reinstated" and sentenced Coello to thirty (30) days in jail. DiLeo imposed this sentence without conducting any analysis as to the aggravating and mitigating factors warranting the incarceration of Coello for a petty disorderly persons offense, or for contempt of court as required by law. Moreover, DiLeo also taunted and humiliated Coello by sarcastically telling her she did not need to complete the anger management counseling because now she is going to jail for thirty days. DiLeo then instructed his court officer to "take her."

49.     Coello begged and pleaded with DiLeo not to send her to jail and not to take her away from her children. To which DiLeo responded: "I did not take you away from your children, you took yourself away from your children." He further instructed Coello to "stop talking" and to "look at me."

12

Case 2:20-cv-01682-SDW-LDW   Document 27-4   Filed 07/21/20   Page 14 of 91 PageID:
Case 2:20-cv-01682-SDW-LDW   Document 23   Filed 07/01/20   Page 13 of 90 PageID: 491
627

50.     Coello was immediately taken away to jail and incarcerated.

51.     The aforesaid imposition of this sentence for thirty (30) day incarceration by DiLeo, under the circumstances presented, was unlawful and in violation of Coello's rights as protected by the U.S. Constitution and the NJ Constitution.

## V.     Motion for Reconsideration of Sentence

52.     While imprisoned, Coello retained James P. Krupka, Esq. of Pitman, Mindas, Grossman, Lee, Bross and Moore, P.C. to represent her. On or about January 18, 2008, two days after Coello's imprisonment, Mr. Krupka filed a Notice of Motion for Reconsideration of Sentence which was served upon DiLeo, Scutari, Estabrooks and Elizabeth Gavigan, the Linden Municipal Court, Court Administrator.

53.     On behalf of Coello, Mr. Krupka asked for reconsideration of the jail sentence and to impose probation along with an Order to complete anger management counseling within a reasonable amount of time.

54.     In his legal memorandum, Mr. Krupka reminded DiLeo that the Citizen's Complaint for harassment was "basically a she said/she said situation." Furthermore, Mr. Krupka advised DiLeo that Coello had no prior convictions. Mr. Krupka argued that in light of the facts of this case and the absence of any prior convictions, a thirty (30) day jail sentence was "unjust." He also reminded DiLeo that while Coello did not complete twenty-six (26) weeks of anger management counseling, she did obtain approximately 21 hours of counseling from her pastor over the course of 16 sessions.

55.     Mr. Krupka also advised DiLeo of the following personal details of Coello's personal life which further mitigated a jail sentence, particularly in light of her substantial compliance with the suspended sentence terms:

    a.   She was raising three daughters, ages 15, 13 and 5, including her boyfriend's daughter from a previous relationship;

    b.   She works at Care Station in Linden, NJ appx. 25 hours per week to help support her family;

    c.   In addition to working part-time, she was a full-time college student at Union County College studying criminal justice;

    d.   Her sister is terminally ill with lung cancer and has been advised by the doctors that she only has six (6) months to live.

56.    Mr. Krupka requested oral argument and advised DiLeo that he intended to bring Figueroa, Coello's boyfriend and father of one of her children, along with Reverend Joseph Cancelliere to testify.

57.    On January 24, 2008 Mr. Krupka requested an "immediate hearing" as Coello was currently incarcerated. Alternatively, Mr. Krupka asked DiLeo to contact his office so that Coello's right to appeal will not be jeopardized. Mr. Krupka requested a stay of Coello's sentence pending appeal. Scutari was also sent a copy of this letter, but he did not respond, nor take any action in response.

58.    Without excuse or justification, DiLeo delayed and did not hold oral argument on the matter until January 30, 2008, by which time Coello had already spent fourteen (14) days in jail for a petty disorderly persons offense.

59.    Scutari did not respond to the motion, nor take any action in response. Moreover, no other prosecutor from Linden Municipal Court responded to the motion.

60.    By letter dated January 23, 2008, Estabrooks wrote to DiLeo, opposed the motion and requested that she be permitted to appear for oral argument. Nowhere within her correspondence does Estabrooks indicate whether she intends to appear in her capacity as counsel for Messina, or rather in her capacity as the acting prosecutor.

14

61.     The results of this motion, including whether a hearing ever took place, is unclear at this time. However, the New Jersey Automated Complaint System ("ACS") records confirm that Coello was not released from prison until February 3, 2008 after having been incarcerated for eighteen (18) days.

## VI.    Post-Conviction Relief

62.     Coello was forced to live with this conviction and imprisonment on her record for another eight (8) years.

63.     It was not until approximately November 14, 2016 that Coello, through her attorneys Schiller McMahon LLC, filed a motion for post-conviction relief, seeking an Order vacating her aforesaid conviction for violations of her State and Federal Constitutional rights, as well as a violation of NJ Court Rule 7:8-7(b) and State v. Storm, 141 N.J. 245 (1995).

64.     The State, through Clark Municipal Prosecutor, Jon-Henry Barr, Esq., did not oppose Coello's motion for post-conviction relief. At oral argument, on the record before The Hon. Antonio Inacio, J.M.C. ("Judge Inacio") on February 14, 2018, Mr. Barr stated:

> *"Judge, I just want to assure the Court that this is – this entire issue is something that I really have considered very carefully. I did review submissions of both counsel. I reviewed the facts of the case and, yes my own experience and knowledge of this particular judge and the truly extraordinary lengths to which the judicial system has gone to excoriate them really for what happened. And as I said, I was – I remember reading the Third Circuit opinion and was astonished that they went so far as to pierce his judicial immunity.*
>
> *I feel that the State is completely ill-equipped and we would not be serving the interest of justice by opposing Mr. McMahon's application. When you have a letter of contamination this bad – you know, it's one thing, Judge – I understand what the Court's – the Court's concerned about is, did everything that Judge DiLeo do when he was on the bench, is that – is everything contaminated? And I don't think you should – I don't think any – any attorney should be able to sort of make – automatically make that assumption. However, in this particular case there is enough that is indisputable with respect to how the Storm application was incomplete*

*and what happened to this young lady. It's just too much, The stench is too great. The interest of justice will not be served by seeing a conviction made, and in this Prosecutor's view, and I reviewed this by other – I got other prosecutors to review that as well.*

65.    In short, Mr. Barr advised the court that he "can't and won't" oppose the motion for post-conviction relief.

66.    By way of Order and written opinion dated February 26, 2018, Judge Inacio granted Coello's motion for post-conviction relief. (A copy of Judge Inacio's written opinion of February 26, 2018 is annexed hereto as **Exhibit C**).

67.    In overturning Coello's conviction, Judge Inacio stated in pertinent part:

*". . . [T]he issue that this Court finds most troubling is the sentencing of this defendant to a thirty (30) day jail term on a petty disorderly persons offense, albeit couched in terms of a suspension of jail time if the defendant attends anger management counseling. As a government of laws and a civil society, we must remain cognizant, in the context of a criminal sentence, of the presumption against incarceration. And moreover, the commission of a petty disorderly persons offense in New Jersey is not classified as a crime. The true exercise of judicial power is to have the power and not to use it, or better yet, know when to use it. The record before this Court is devoid of any aggravating or mitigating factors to support a thirty (30) day maximum jail sentence, even if suspended, imposed against this defendant for a conviction of a petty disorderly persons offense. That sentence is repugnant to this Court and begs the question as to why the maximum term of incarceration was appropriate as to this defendant.*

*Since the incarceration/commitment of this defendant to the Union County jail took place over nine (9) months after the original sentence, this Court can only conclude that the defendant was sent to jail for not complying with the anger management counseling aspect of the sentence. In that case, the defendant should have been declared in contempt of the court's sentence and a hearing should have been held prior to the defendant's commitment to the county jail to ascertain the reasons for the defendant's failure to abide by the sentence. What if the reasons for the defendant's failure to attend anger management counseling were due to a medical condition or due to financial concerns relative to the payment by the defendant for the anger management counseling? In the absence of the contempt hearing, or the lack of court records, we will never know.*

> *. . . But was the sentence against this defendant just?*
>
> *This Court concludes that it was not. Without any determining aggravating and/or mitigating factors warranting the incarceration of this defendant for a petty disorderly persons offense, or for contempt of court, this Court cannot determine the justice in sentencing the defendant to the maximum term under the statute. The victim's understandable desire for justice is outweighed by the fact that this defendant was unjustly sentenced to jail, unjustly spent a minimum of eighteen (18) days in jail and now has the record of this unjust disposition affecting the defendant's life."*

68.    Judge Inacio later issued a revised opinion dated March 8, 2018 in response to Schiller McMahon's request for clarification concerning his February 26, 2018 opinion. Within his revised opinion, Judge Inacio ordered that:

> *"[T]he procedural defects surrounding the appointment of private counsel to prosecute the case ab initio, the apparent failure of a contempt hearing being held prior to the incarceration of the defendant, and, this Court's view that an unjust sentence is an illegal sentence, the petition filed on behalf of the defendant is granted, the conviction is hereby vacated and the case is dismissed. However, the imposition of the fine and court costs in the original sentence against the defendant shall remain unaffected."*

(A copy of Judge Inacio's revised written opinion dated March 8, 2018 is annexed hereto as **Exhibit D**).

69.    Thereafter, on or about March 19, 2018, Messina, through her new counsel, Joseph P. Depa, Jr., Esq. filed a notice of appeal challenging Judge Inacio's decision granting Coello's petition for post-conviction relief.

70.    By way of Order and written decision dated June 6, 2018, the Hon. John M. Deitch, J.S.C. denied Messina's appeal. (A copy of Judge Deitch's written opinion of June 6, 2018 is annexed hereto as **Exhibit E**).

17

## VII.   **Expungement**

71.   Shortly after Judge Deitch denied Messina's appeal, on August 17, 2018, Coello filed a Verified Petition for Expungement seeking to expunge the charges in the matter of <u>State v. Coello</u>.

72.   By way of Order dated November 19, 2018, The Hon. Robert Kirsch, J.S.C., granted Coello's petition for expungement. (A copy of Judge Kirsch's Order of November 19, 2018 is annexed hereto as **Exhibit F**).

## VIII.   **The Severe & Pervasive Constitutional Violations Were the Result of Long-Standing Customs, Practices & Policies of the City of Linden, DiLeo, Scutari and Gerbounka.**

73.   The actions of defendants DiLeo, Scutari, Gerbounka and the City of Linden (collectively "the Linden defendants") above were not an isolated incident but rather a long-standing custom, policy and practice by the Linden Defendants to deny the accused their rights under the United States and New Jersey Constitutions. Notably, DiLeo admitted this fact in his Answer to the Formal Complaint filed against him by the Supreme Court of New Jersey, Advisory Committee on Judicial Conduct, when he stated that he "relied upon the Court's prior practice" in denying counsel to defendants and committing other due process violations.

### A.   *The Linden Defendants Customs, Practices & Policy of Denying Defendants the Right to Counsel*

74.   It was the practice, policy and custom of the Linden Defendants to deny litigants the right to counsel as mandated by both the U.S. and New Jersey Constitutions, all of which was countenanced by Scutari who relinquished his role as municipal prosecutor to DiLeo and other unauthorized individuals.

75.   For the overwhelming majority of defendants that appeared before DiLeo, the consequence of Defendants' actions meant one thing: JAIL!!!!

18

76.    In some cases -- as in the matter of <u>State v. Wendell Kirkland and Anthony Kirland, Summons Nos. W-2009-874/875/876/877.</u> – DiLeo outright denied the accused the right to counsel. The critical facts of that matter were outlined in the Third Circuit's decision in <u>Kirkland v. DiLeo</u>, 581 F. App'x 111, 113 (3d Cir. 2014) and are incorporated herein.

77.    <u>State v. Christy Gobel</u>: On March 25, 2008, Ms. Gobel appeared before DiLeo for a disorderly persons offense of criminal mischief in violation of N.J.S.A. 2C:17-3A(1). The case was not old or "over-aged" as Ms. Gobel was arraigned only 2 weeks before on March 11, 2008. The following colloquy then took place between Ms. Gobel and DiLeo:

| DiLeo: | Are you to proceed? |
|---|---|
| Gobel: | No. |
| DiLeo: | Why not? |
| Gobel: | I don't have the funds for an attorney. |
| DiLeo: | You have passed the....Ah, well, this is from December 27, you have passed the time when you can hire an attorney. |

78.    DiLeo forced her to trial unrepresented, conducted a trial without the presence of Scutari, and found her guilty. DiLeo then sentenced Ms. Gobel to county jail for a period of 90 days despite the fact that she had no prior criminal record or criminal convictions of any kind.

79.    In addition to a county jail sentence, DiLeo levied an excessive fine in the amount $1,000.00 in violation of <u>N.J.S.A.</u> 2C:44-2. Ms. Gobel was never read her appeal rights.

80.    <u>State v. Andre Rosero</u>: On December 21, 2010, DiLeo tried to force Mr. Rosero to proceed to trial without a lawyer on the grounds that he had waived his right to a

Case 2:20-cv-01682-SDW-LDW    Document 27-4    Filed 07/21/20    Page 21 of 91 PageID:
Case 2:20-cv-01682-SDW-LDW    Document 23    Filed 07/01/20    Page 20 of 90 PageID: 498
634

public defender. In light of DiLeo's unconstitutional actions, Mr. Rosero contacted the American Civil Liberties Union of New Jersey ("ACLU-NJ").

81.     Alexander Shalom of the ACLU-NJ sent a letter to the Court (via Mr. Rosero by hand delivery and to chambers via facsimile) attempting to cure the problem. Not relenting, DiLeo ordered Mr. Rosero to appear that afternoon ready for trial.

82.     When Attorney Shalom appeared with Mr. Rosero that afternoon, DiLeo refused to allow Attorney Shalom to appear solely on the issue of Mr. Rosero right to a public defender, yelling at Attorney Shalom to sit down. DiLeo finally acquiesced and allowed Mr. Rosero apply for the public defender.

83.     State v. Z.G.: On November 23, 2010, the defendant appeared in court for a shoplifting charge issued on September 12, 2010, which alleged that she shoplifted $129.76 of merchandise from Target in violation of N.J.S.A. 2C:20-l I B(2). While the defendant was originally assigned the public defender on September 28, 2010, she discharged the public defender on October 20, 2010 in order to hire private counsel. Apparently, DiLeo advised the defendant who was unrepresented that the case was set for trial. Specifically, the colloquy was as follows:

> DiLeo:       Are you ready to proceed today?
>
> Defendant:   Um, I . . . I'm not really because my lawyer . . . I don't have enough for the lawyer. I tried . . .
>
> DiLeo:       Miss, today's your trial date.

84.     After advising the defendant she was proceeding to trial without defense counsel, DiLeo then invited her to speak with Scutari. Later in the court session, the defendant

returns to the courtroom with a plea slip executed by Scutari that states in big letters: "NO JAIL."[1]

85.     As such, the defendant plead guilty to her first shoplifting offense although DiLeo never elicited a factual basis for the plea. DiLeo then sentenced the 22-year-old women with no prior criminal record but only one non-criminal local ordinance violation to an illegal 150-day jail sentence with 120 days suspended, for a net jail sentence of 30 days.

86.     Upon hearing of the jail sentence, Z.G. began crying telling DiLeo that she has a 1-year old sick child and the items taken were clothes and a DVD for her daughter. DiLeo ordered the officer to drag the defendant to jail while she was crying and screaming.

87.     When a woman who was with the defendant's 1-year-old daughter questions DiLeo that the plea agreement called for no jail time, DiLeo stated as follows:

> DiLeo:     That was just a recommendation ma'am. [Scutari] doesn't have her CCH. I have her CCH. *And I'm charged with making sure that people don't steal stores into bankruptcy in Linden.*

88.     DiLeo's statements during the Z.G. sentencing demonstrate his blatant disregard for constitutional law, New Jersey criminal practice and procedure law despite almost 20 years as Linden's municipal prosecutor and municipal judge.

89.     Once again, Scutari was not in the court for this matter despite the fact that the defendant was yelling and screaming that she didn't want to be separated from her child,

---

[1]     DiLeo had a practice and policy of accepting plea agreements from the municipal prosecutor that called for a non-custodial sentence and instead, imposed jail terms. Thus, countless defendants executed plea forms thinking that they were receiving fines and unwittingly found themselves in the Union County Correctional Facility that night. Another example is the case of State v. Benjamin Mitchell, where on April 7, 2010, Mr. Mitchell appeared before DiLeo for shoplifting $66.12 of merchandise. Mr. Mitchell and Scutari entered into a plea agreement that stated: "No priors guy is out of work. Fine him the minimums." After accepting the guilty plea, DiLeo disregarded the plea agreement and sentenced Mr. Mitchell to the county jail for an illegal 180 "day for day"/no parole sentence. Remarkably, based upon a review of court recordings, both Scutari and the public defenders knew DiLeo was disregarding the State's plea agreements as "only a recommendation" and incarcerating defendants. See State v. Jasmine Wadley, November 15, 2010.

requiring officers to drag her into custody. It is implausible that Scutari did not hear the screaming if he was in the building.

90.     In addition to the outright denial of counsel in some instances, DiLeo's denial of counsel in other occasions was more subtle. As the records detail, DiLeo unapologetically incarcerated most first-time shoplifters for varying jail sentences that seemed to be pulled out of thin air.

91.     Despite knowing his predilection for incarcerating shoplifters, DiLeo never conducted a proper waiver hearing when pro se defendants appeared before him as first-time offenders, unfamiliar with the court system.

92.     In contravention of both United State Supreme Court and New Jersey Supreme Court precedents, DiLeo never conducted a "searching inquiry" as required by the New Jersey Supreme Court in State v. Crisfali, 128 N.J. 499 (1992) so that the defendants "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta v. California, 422 U.S. 806 (1975).

93.     DiLeo routinely failed to find on the record that the waiver of the right to counsel was knowing and intelligent as required by New Jersey Court Rule 7:6-2(a)(1).

94.     The practice, policy, and custom of the Linden Defendants in which they consistently violated the Sixth Amendment and Due Process Rights of litigants appearing in the Linden Municipal Court directly resulted in the unnecessary and illegal incarceration of dozens of first-time, non-violent offenders.

95.     Examples of this can be seen in abundance from a review of the court recordings. In the course of only 2 days -- on January 6 and 7, 2009 -- DiLeo incarcerated 5

22

women for shoplifting despite the fact that they were all first-time offenders, with no prior criminal records:

    a. State v. Candice Wolfe (S-2008-981/January 6, 2009);

    b. State v. Martha Everitt (S-2008-8995/January 6.2009);

    c. State v. S. Banks (S-2008-1039/January 6, 2009);

    d. State v. Carmen Hernandez (S-2008-997/998/January 7, 2009); and

    e. State v. Yessica Hernandez {S-2008-997/998/January 7, 2009)

96.    In each and every one of the cases identified in Paragraph No. 94, DiLeo violated the defendants' Sixth Amendment Right to Counsel and Due Process Rights under both the State and Federal Constitutions.

97.    Each of these defendants in the cases identified in Paragraph No. 94 -- women with no prior criminal record -- appeared at court for their arraignment on disorderly persons offenses of shoplifting. DiLeo arraigned the defendants wherein they "waived" an attorney. In doing so, DiLeo failed to perform a "searching inquiry" as required by State v. Crisfali, 128 N.J. 499 (1992), nor did he find on the record that the waiver of the right to counsel was knowing and intelligent as required by New Jersey Court Rule 7:6-2(a)(l).

98.    After pleading guilty with no attorney, with no discovery, and without consulting with the municipal prosecutor, the defendants in the cases identified in Paragraph No. 94 were sentenced to an illegal 60 day jail sentence: 30 days were "suspended" on the condition they not get into trouble again in the City of Linden. Then, the defendants were immediately sentenced to thirty (30) days in jail despite the absence of any prior convictions. The women were taken directly to jail.

99.    Not surprisingly, defendants identified in Paragraph No. 94 were not read their

appeal rights before being taken to the Union County Correctional Facility, nor was the municipal prosecutor anywhere in the courtroom.

100.    The Linden Defendants' custom, practice and/or policy of denying defendants the right to counsel was not only limited to the calendar year 2009.

101.    **State v. Ebon y Latham:**    On December 13, 2010, Ms. Latham -- a young women with no prior criminal record -- appeared at court for a disorderly persons offense of shoplifting from Old Navy. Ms. Latham "waived" an attorney. In doing so, DiLeo failed to perform a "searching inquiry" as required by State v. Crisfali, 128 N.J. 499 (1992), nor did he find on the record that the waiver of the right to counsel was knowing and intelligent as required by New Jersey Court Rule 7:6- 2(a)(l ).

102.    After pleading guilty with no attorney and without consulting with the municipal prosecutor, Ms. Latham was sentenced to a 90-day jail sentence: 60 days were "suspended" on the condition she not get into trouble again in the City of Linden. Then, days before Christmas, Ms. Latham was required to serve 30 days in jail for her first offense of any sort.

103.    When Ms. Latham' s' mother appeared an hour later and asked the Court if she could vacate the plea and hire an attorney because her daughter could not go to jail due to the fact that there were childcare issues, DiLeo said no. When Ms. Latham's mother then asked for a surrender date, so childcare could be arranged, DiLeo once again said no.

104.    DiLeo then went into a diatribe on how Ms. Latham came into Linden, New Jersey from New York to shoplift and now had to face the conseq uences.

24

Case 2:20-cv-01682-SDW-LDW    Document 27-4    Filed 07/21/20    Page 26 of 91 PageID:
639
Case 2:20-cv-01682-SDW-LDW    Document 23    Filed 07/01/20    Page 25 of 90 PageID: 503

B.    *Defendants Appearing Before DiLeo Were Routinely Incarcerated Because They Did Not Have Money to Pay Fines*

105.    In 1983, the United States Supreme Court held in <u>Bearden v. Georgia</u>, that a criminal defendant could not be imprisoned solely because he/she did not have money to pay fines. Apparently, almost 30 years later, DiLeo never got the message.

106.    In violation of all legal and societal norms, DiLeo routinely incarcerated defendants or had defendants taken into custody simply because they did not have money to pay fines. DiLeo's repeated actions constitute another unconstitutional custom, practice and/or policy of the Linden defendants.

107.    **State v. C. Hawkins**: On December 14, 2010, Mr. Hawkins was seen on the video link for an outstanding warrant in the amount of $364 from 2007. DiLeo advised Mr. Hawkins that he would only be released if the money was paid - be it that day, 2 weeks, 1 month, or 6 months. Thus, DiLeo enacted his own form of debtor's prison and refused to give Mr. Hawkins credit for time served.

108.    When Mr. Hawkins questioned the Court by stating "yeah right", DiLeo sentenced Mr. Hawkins to an additional 30 days in jail for "being sarcastic to the Court." Not surprisingly, DiLeo did not follow the direct contempt procedures set for in Rule 1:10-1, nor did DiLeo permit Mr. Hawkins the opportunity to respond as mandated by said rule.

109.    **State v. L. Avery (W-2008-463)**:  Mr. Avery was seen on the video link for an outstanding warrant in the amount of $530 from 2007. DiLeo advised Mr. Avery that he would only be released if the money was paid. DiLeo stated "when you pay you'll be released. Today, 5 days, 3 months.  Pay or stay, till you get tired of it."

110.    In response, Mr. Avery called DiLeo an "idiot." DiLeo then sentenced Mr. Avery to 60 days in jail. Once again, DiLeo did not follow the direct contempt procedures set

25

for in Rule 1:10-1, nor did DiLeo permit Mr. Hawkins the opportunity to respond as mandated by said rule.[2]

111.  **State v. John Baptiste**: One of the most flagrant examples of DiLeo's unconstitutional conduct is seen in the matter of **State v. John Baptiste**, W-2008-1055 which was heard on February 24, 2009.

112.  On that date, Mr. Baptiste made his first appearance on a downgraded shoplifting charge and plead guilty. In exchange for his guilty plea, Mr. Baptiste -- a young man with no prior criminal record -- received a total fine $564 and a suspended jail sentence of 90 days.

113.  After the sentencing which occurred at approximately 6:15 p.m., DiLeo advised Mr. Baptiste that he could pay the fine outside and when Mr. Baptiste advised that he did have the funds, the following colloquy occurred:

| | |
|---|---|
| Mr. Baptiste: | I don't have anything to payoff fine. I didn't come here with money to pay the fine. |
| DiLeo: | Ok, Officers put him into custody. I go so far and then I'm done and I'm done. The test I have to apply is whether or not you are making a good faith effort to pay in full today, you have not done that and therefore, I place you under arrest and order you |

---

[2]  DiLeo also had a practice and policy of misusing and blatantly abusing his contempt powers. For example, in State v. Rivera, L-086545/6, on January 26, 2010, Mr. Rivera appeared on a motor vehicle summons. When it appeared to DiLeo that Mr. Rivera was laughing in court, DiLeo declared "contempt in face of court" and had Mr. Rivera taken into custody. Mr. Rivera's friend -- Mr. Taveras -- reacted and then found himself in custody as well. Both men were taken into the court's holding area. After some time, DiLeo agreed to release Mr. Rivera only if his sister agreed to pay a $300 contempt fine. Thereafter, DiLeo brought Mr. Taveras into the courtroom, berated him for approximately 3 minutes, told him he would have sent them to jail for 10 days but *"once the lights went out you might not be real happy. . . I was afraid of scarring you."* DiLeo then tells Mr. Taveras that he is fined $300 which he going to "tack" onto Mr. Rivera's fine, to be paid by Mr. Rivera's sister. When Mr. Rivera's sister objects, DiLeo says *"[w]ell  I would be better off just throwing him in jail. Alright bring him in the back."* Mr. Rivera's sister crying, states that it was "crazy", and agrees to pay the fine. Mr. Taveras is then released.

remanded to the jail until such time as you make a good faith effort to pay in full. Put him on the wall.

114.    As if the illegal arrest and gross violation of Mr. Baptiste's constitutional rights was not bad enough, DiLeo then arrested his female companion only known as "Lisa Marie" from the court logs:

Female:      Um, Judge. He has the keys for my car.

DiLeo:       I'm sorry for you.

Female:      You're sorry for me!!! Whatever.

115.    DiLeo then declares "Lisa Marie" in contempt, summarily sentences her to 10 days, and orders the court officers to "[p]ut her on the wall as well!!!"

116.    After approximately 90 minutes, DiLeo releases Mr. Baptiste and "Lisa Marie" when Mr. Baptiste promised to make arrangements to pay $200.

117.    Once again, the municipal prosecutor Scutari was not in courtroom to stop DiLeo's unconstitutional conduct.

C.    _DiLeo Routinely Conducted Trials Without a Prosecutor, Permitting Law Enforcement, Code Officials & Even Target Security Employees to Present Cases_

118.    It was the custom, practice and/or policy of the Linden Defendants to violate litigants' constitutional rights by allowing persons other than the municipal prosecutor, Scutari, to present cases. Below is a small sampling of the cases:

a. **State v. Jamal Merhi**: On February 17, 2009, DiLeo conducted moving violation trial without the municipal prosecutor in which the Court permitted a New Jersey State Trooper to present the case for the State of New Jersey in violation of New Jersey Court Rule 7:8-7(b);

b. **State v. A. Goins-Jenkins**: On February 24, 2009, DiLeo conducted motor vehicle trial without the presence of municipal prosecutor. Prior to

the trial, DiLeo asks Linden Police Officer Michael J. Cataline: "Do you wish the prosecutor to present your case?" In response, Officer Cataline tells DiLeo: "No, I can do it." DiLeo then conducts a trial in violation of Rule 7:8-7(b);

c. **State v. Wen Chen**: On December 13, 2010, DiLeo conducted a motor vehicle trial without the presence of the municipal prosecutor and with the defendant participating through the use of a Cantonese interpreter. At trial, DiLeo conducted the direct examination of the trial in which he elicited information inadmissible under the New Jersey Rules of Evidence.

d. **State v. Express Taxi**: On May 4, 2010, DiLeo conducted an ordinance trial where he permitted the license clerk for Linden to present the case. Prior to the start of the trial, DiLeo asked the inspector whether he wanted to prosecute the case wherein DiLeo states: "Ok, I will let you proceed on your own."

e. **State v. Laverne Gordon**: On September 1, 2020, DiLeo permitted the Target security employee to present for the State of New Jersey in violation of Rule 7:8-7(b). During the course of trial, DiLeo conducted the direct examination of the Target employee as if he were the prosecutor.

f. **State v. Walker/State v. Acevedo**: On December 14, 2010, DiLeo conducted red light traffic trials without the municipal prosecutor in which the Court permitted an investigator from the City of Linden Traffic Division to present the case for the State of New Jersey in violation of New Jersey Court Rule 7:8-7(b); and

g. **State v. A. Jalloh**: On January 5, 2011, Mr. Jalloh appeared in Court for a trial on motor vehicle summons. DiLeo conducted a trial without the presence of the prosecutor and permitted the State Trooper present the case. DiLeo, in contravention of all legal authority, permitted the State Trooper to cross-examine the defendant, Mr. Jalloh, in violation of New Jersey Court Rule 7:8-7(b).

D.    *The Linden Defendants Routinely Initiated, Maintained, Pursued and/or Pressed Criminal Proceedings Against Individuals Without Probable Cause.*

119.    It was the Linden Defendants' custom, practice and/or policy to violate litigants' constitutional rights by initiating, maintaining, pursuing and/or pressing criminal proceedings against individuals without probable cause including but not limited to failing to comply with New Jersey Court Rule 7:2-1 et seq., *inter alia* issuing arrest warrants without a

Case 2:20-cv-01682-SDW-LDW   Document 27-4   Filed 07/21/20   Page 30 of 91 PageID:
643
Case 2:20-cv-01682-SDW-LDW   Document 23   Filed 07/01/20   Page 29 of 90 PageID: 507

finding by a judge, by a municipal court administrator or deputy court administrator of a court

with jurisdiction that it appears to the judicial officer from the complaint, affidavit, certification,

or testimony that there is probable cause to believe that an offense was committed and the

defendant has committed it and/or without the judicial officer stating his/her finding of probable

cause on the face of the summons.

**IX.     Scutari Purposefully Relinquished His Prosecutorial Duties to DiLeo, Knowing the
        Court Was Consistently Committing Gross Constitutional Violations Directly
        Resulting in the Unconstitutional Incarceration of defendants appearing in Linden
        Municipal Court**

120.    Scutari was rarely in Court for the entry of pleas, sentencings, or trials --

relinquishing all prosecutorial administrative duties to DiLeo.

121.    It was the Linden Defendants' custom, practice and/or policy to allow Scutari to

willfully and wantonly relinquish all prosecutorial duties and have DiLeo and/or other unauthorized

individuals serve and act as prosecutor, thereby perpetuating violations of constitutional rights of

persons appearing before the court in a gross unconstitutional manner instead.

122.    The City of Linden and Gerbounka were warned of the improper and

unconstitutional conduct of DiLeo and Scutari.

123.    The City of Linden and Gerbounka were notified that it was Scutari's custom,

practice and/or policy to leave court prior to the court session being finished, establishing Scutari

agreed with and conspired to relinquish his administrative prosecutorial duties to DiLeo and/or

other unauthorized individuals

29

A.    *DiLeo Confirms to The Advisory Committee on Judicial Conduct That Scutari Had Developed A Custom, Practice and/or Policy of Leaving While Court Was in Session.*

124.    As a result of his conduct in the Kirkland case, DiLeo gave sworn testimony before the Supreme Court of New Jersey, Advisory Committee on Judicial Conduct. During the course of that proceeding, DiLeo stated in specific detail how he began performing Scutari's administrative prosecutorial duties. Specifically, DiLeo stated, in pertinent part:

> *"Well, Justice, my municipal prosecutor is Nicholas Scutari, Senator Scutari. He's a senator in my area. He's also the chairman of the Judiciary Committee in Trenton. And Mr. Scutari at some point before this started committing a practice of leaving court, and the way the court is setup the main courtroom has three sets of doors and those doors are kept shut otherwise all the noise in the hallway comes out, that is a long hallways going across the back of the courtroom, and his office is on the other side of that hallway. And so the door were shut and he would leave court without telling me that he was gone, and I'd get to a point in the end of the night and I would start trying to get the trials done and I'd call for the prosecutor and they'd come back and tell me the prosecutor is gone. Well, where did he go? He's gone for the day. Well, call him on his cell phone. He doesn't answer. So I tried to handle everything the best that I could, the best that I could, but I had a situation where -- and I did speak to him. I did tell him . . ."*

125.    At that same hearing, in response to a question from Justice Handler as to whether there were other instances in which prosecutions proceeding without a prosecutor or representative from the prosecutor's office, DiLeo answered:

> *Justice, I'll be quite honest with you I don't -- at this time I'm trying to think of where this happened, I can't think of a -- nothing stands out in my mind right now. I know that it had been going on for a long time and I was on one hand trying to handle the number of cases, trying not to increase the backlog. I was being told get rid of the backlog, don't let more pile up. . . ."*

126.    DiLeo held the positions of Linden Municipal Court Judge approximately nine years, from approximately 2003 to 2012.

127.    Scutari served as the Linden Municipal Prosecutor for approximately fifteen years from 2004 to 2019.

B.    *Consistent with His Custom, Practice and/or Practice of Relinquishing His Prosecutorial Duties to DiLeo, Scutari Did Not Participate in Coello's Trial*

128.    In the matter of <u>State v. Coello</u>, consistent with his custom, practice and/or policy as described by DiLeo before the Advisory Committee, Scutari did not fulfill his duties as municipal prosecutor. A review of the record reveals Scutari did not have any involvement whatsoever in this matter. As a result, both DiLeo and Estabrooks took turns serving as prosecutor.

129.    Similarly, in the <u>Kirkland</u> matter, and as outlined in greater detail in the <u>Kirkland</u> complaint, Scutari did not participate in the municipal court proceedings.

130.    The failure of Scutari and his complete relinquishment of his prosecutorial duties to DiLeo and/or Estabrooks was the direct cause of the injustices and damages caused to Coello.

**FIRST COUNT**

**VIOLATIONS OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION (DENIAL OF RIGHT TO COUNSEL, CONFRONTATION CLAUSE VIOLATION AND DENIAL OF THE RIGHT TO A FAIR TRIAL)**

*ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST DILEO, SCUTARI, GERBOUNKA, ESTABROOKS AND JOHN DOES 1-10*

131.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

132.    The Sixth Amendment to the United State Constitution guarantees the right to a fair trial: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of

31

the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

133.   DiLeo, acting on behalf of the City of Linden, deprived Coello of the aforesaid guaranteed civil rights in the manner in which he conducted the trial and all related proceedings, in the matter of <u>State v. Coello</u>; specifically, including but not limited to conducting proceedings without Coello's counsel present; excluding Coello from the courtroom during adverse witness testimony; and in permitting Estabrooks to serve as the municipal prosecutor under the facts and circumstances present.

134.   DiLeo knowingly transferred all prosecutorial duties to Estabrooks in disregard of the law, rules and regulations governing such transfer. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

135.   Scutari, through his actions and omissions, knowingly transferred all prosecutorial duties to DiLeo and/or other unauthorized individuals such as Estabrooks. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

136.   Gerbounka knew or should have known that DiLeo and/or Scutari would appoint private lawyers to act as municipal prosecutors and/or permitted DiLeo to engage in prosecutorial actions in violations of the law, rules and regulations governing such appointments, yet never corrected or cured these improper practices. These improper practices led to the

32

wrongful conviction, illegal sentencing and incarceration of numerous other individuals appearing before this court, including Coello.

137.    Estabrooks actions as acting prosecutor were egregious. Estabrooks, through her actions and omissions, obtained or secured the role and responsibility to serve as acting prosecutor in the criminal prosecution of Coello, despite her inherent conflict of interest, lack of impartiality and clear appearance of impropriety. Furthermore, after securing the intended conviction of Coello, Estabrooks then initiated and appeared at the post trial-hearing which resulted in the incarceration of Coello, consistent with Estabrooks' request.

138.    Alternatively, at the post-trial hearing, Estabrooks was acting in her capacity as private counsel for Messina, hence, the prosecutorial function fell into the hands of DiLeo in light of the absence of Scutari.

139.    Estabrooks was empowered to so act by virtue of her appointment as prosecutor by DiLeo and Scutari, while at the same time, pursuing ulterior motives to further enhance her representation of Messina in separate legal matter(s).

140.    The actions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 violated clearly established law, rules, and regulations as no reasonable municipal court judge, municipal court prosecutor or supervisor of municipal court administration would believe said actions to be lawful at the time they were done.

141.    DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were acting under color of law and with gross, callous indifference when they engaged in this illicit conduct which deprived Coello of her civil and constitutional rights as guaranteed by the Sixth Amendment of the United States Constitution and as such the aforementioned acts constitute an actionable violation of 42 U.S.C. §1983.

142. As a direct and proximate result of the aforementioned violations of Coello's constitutional civil rights, she has suffered a loss of liberty in having been imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Louis M.J. DiLeo, Nicholas P. Scutari, Richard J. Gerbounka, Kathleen Estabrooks and John Does 1-10, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

**SECOND COUNT**

**VIOLATIONS OF ARTICLE I, SECTION 10 OF THE NEW JERSEY CONSTITUTION (DENIAL OF RIGHT TO COUNSEL, CONFRONTATION CLAUSE VIOLATION AND DENIAL OF THE RIGHT TO A FAIR TRIAL)**

*ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 ET SEQ. AGAINST DILEO, SCUTARI, GERBOUNKA, ESTABROOKS AND JOHN DOES 1-10*

143. Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

144. Article I, Section 10 of the New Jersey Constitution guarantees the right to a fair trial: "In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in his defense."

Case 2:20-cv-01682-SDW-LDW   Document 27-4   Filed 07/21/20   Page 36 of 91 PageID:
Case 2:20-cv-01682-SDW-LDW   Document 23   Filed 07/01/20   Page 35 of 90 PageID: 513
649

145.     DiLeo, acting on behalf of the City of Linden, deprived Coello of the aforesaid guaranteed civil rights in the manner in which he conducted the trial and all related proceedings, in the matter of State v. Coello; specifically, including but not limited to conducting proceedings without Coello's counsel present; excluding Coello from the courtroom during adverse witness testimony; and in permitting Estabrooks to serve as the municipal prosecutor under the facts and circumstances present.

146.     DiLeo knowingly transferred all prosecutorial duties to Estabrooks in disregard of the law, rules and regulations governing such transfer. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

147.     Scutari, through his actions and omissions, knowingly transferred all prosecutorial duties to DiLeo and/or other unauthorized individuals such as Estabrooks. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

148.     Gerbounka knew or should have known that DiLeo and/or Scutari would appoint private lawyers to act as municipal prosecutors and/or permitted DiLeo to engage in prosecutorial actions in violations of the law, rules and regulations governing such appointments, yet never corrected or cured these improper practices. These improper practices led to the wrongful conviction, illegal sentencing and incarceration of numerous other individuals appearing before this court, including Coello.

149.    Estabrooks actions as acting prosecutor were egregious. Estabrooks, through her actions and omissions, obtained or secured the role and responsibility to serve as acting prosecutor in the criminal prosecution of Coello, despite her inherent conflict of interest, lack of impartiality and clear appearance of impropriety. Furthermore, after securing the intended conviction of Coello, Estabrooks then initiated and appeared at the post trial-hearing which resulted in the incarceration of Coello, consistent with Estabrooks' request.

150.    Alternatively, at the post-trial hearing, Estabrooks was acting in her capacity as private counsel for Messina, hence, the prosecutorial function fell into the hands of DiLeo in light of the absence of Scutari.

151.    Estabrooks was empowered to so act by virtue of her appointment as prosecutor by DiLeo and Scutari, while at the same time, pursuing ulterior motives to further enhance her representation of Messina in separate legal matter(s).

152.    The actions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 violated clearly established law, rules, and regulations as no reasonable municipal court judge, municipal court prosecutor or supervisor of municipal court administration would believe said actions to be lawful at the time they were done.

153.    DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were acting under color of law and with gross, callous indifference when they engaged in this illicit conduct which deprived Coello of her civil and constitutional rights as guaranteed by Article I, Section 10 of the New Jersey Constitution and as such the aforementioned acts constitute an actionable violation of N.J.S.A. 10:6-1 et seq.

154.    As a direct and proximate result of the aforementioned violations of Coello's constitutional civil rights, she has suffered a loss of liberty, having been imprisoned for eighteen

36

Case 2:20-cv-01682-SDW-LDW   Document 27-4   Filed 07/21/20   Page 38 of 91 PageID:
651
Case 2:20-cv-01682-SDW-LDW   Document 23   Filed 07/01/20   Page 37 of 90 PageID: 515

days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Louis M.J. DiLeo, Nicholas P. Scutari, Richard J. Gerbounka, Kathleen Estabrooks and John Does 1-10, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## THIRD COUNT

### VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION (SUBSTANTIVE DUE PROCESS)

### *ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST DILEO, SCUTARI, GERBOUNKA, ESTABROOKS AND JOHN DOES 1-10*

155.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

156.    The Fourteenth Amendment to the U.S. Constitution states: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

157.    The Fourteenth Amendment to the U.S. Constitution encompasses a substantive component. This portion of the Fourteenth Amendment prohibits officials' actions that shock the conscience and/or upset the balance of "ordered liberty." The Fourteenth Amendment also incorporates the prohibition against the imposition of "cruel and unusual punishment."

37

158.   DiLeo, acting on behalf of the City of Linden, deprived Coello of the aforesaid guaranteed civil rights in the manner in which he conducted the trial and all related proceedings, in the matter of State v. Coello; specifically, including but not limited to conducting proceedings without Coello's counsel present; excluding Coello from the courtroom during adverse witness testimony; and in permitting Estabrooks to serve as the municipal prosecutor under the facts and circumstances present.

159.   DiLeo's imposition of a 30 (thirty) day jail sentence violated Coello's civil rights, as protected by the Fourteenth Amendment. The sentence was entered without affording Coello the right to be heard or to have legal counsel present to advocate on her behalf. Moreover, DiLeo silenced a pastor from the Abundant Life Worship Center who appeared at this hearing to vouch for Coello's substantial compliance with the anger management program. DiLeo, also failed to hold a hearing to ascertain the reasons for the defendant's failure to abide by the sentence or to determine any aggravating or mitigating factors which would warrant imposition of such a sentence.

160.   DiLeo's actions as a municipal court judge shock the conscience.

161.   DiLeo acted as the judge, jury and prosecutor in Coello's case. There can be no "ordered liberty" when a municipal judge disregards all law, rules, and regulations to incarcerate accused individuals, here Coello, appearing before him.

162.   DiLeo knowingly transferred all prosecutorial duties to Estabrooks in disregard of the law, rules and regulations governing such transfer. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

38

Case 2:20-cv-01682-SDW-LDW    Document 27-4    Filed 07/21/20    Page 40 of 91 PageID:
Case 2:20-cv-01682-SDW-LDW    Document 23    Filed 07/01/20    Page 39 of 90 PageID: 517
653

163.    Scutari, through his actions and omissions, knowingly transferred all prosecutorial duties to DiLeo and/or other unauthorized individuals such as Estabrooks. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

164.    Gerbounka knew or should have known that DiLeo and/or Scutari would appoint private lawyers to act as municipal prosecutors and/or permitted DiLeo to engage in prosecutorial actions in violations of the law, rules and regulations governing such appointments, yet never corrected or cured these improper practices. These improper practices led to the wrongful conviction, illegal sentencing and incarceration of numerous other individuals appearing before this court, including Coello.

165.    Estabrooks actions as acting prosecutor were egregious. Estabrooks, through her actions and omissions, obtained or secured the role and responsibility to serve as acting prosecutor in the criminal prosecution of Coello, despite her inherent conflict of interest, lack of impartiality and clear appearance of impropriety. Furthermore, after securing the intended conviction of Coello, Estabrooks then initiated and appeared at the post trial-hearing which resulted in the incarceration of Coello, consistent with Estabrooks' request.

166.    Alternatively, at the post-trial hearing, Estabrooks was acting in her capacity as private counsel for Messina, hence, the prosecutorial function fell into the hands of DiLeo in light of the absence of Scutari.

167.    Estabrooks was empowered to so act by virtue of her appointment as prosecutor by DiLeo and Scutari, while at the same time, pursuing ulterior motives to further enhance her representation of Messina in separate legal matter(s).

39

Case 2:20-cv-01682-SDW-LDW   Document 27-4   Filed 07/21/20   Page 41 of 91 PageID:
Case 2:20-cv-01682-SDW-LDW   Document 23   Filed 07/01/20   Page 40 of 90 PageID: 518
654

168. The actions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 violated clearly established law, rules, and regulations as no reasonable municipal court judge, municipal court prosecutor or supervisor of municipal court administration would believe said actions to be lawful at the time they were done.

169. DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were acting under color of law and with gross, callous indifference when they engaged in this illicit conduct which deprived Coello of her civil and constitutional rights as guaranteed by the Fourteenth Amendment of the United States Constitution and as such the aforementioned acts constitute an actionable violation of 42 U.S.C. §1983.

170. As a direct and proximate result of the aforementioned violations of Coello's constitutional civil rights, she was imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Louis M.J. DiLeo, Nicholas P. Scutari, Richard J. Gerbounka, Kathleen Estabrooks, and John Does 1-10, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## FOURTH COUNT

### VIOLATIONS OF ARTICLE I, SECTION 1 OF THE NEW JERSEY CONSTITUTION (SUBSTANTIVE DUE PROCESS)

*ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 ET SEQ. AGAINST DILEO, SCUTARI, GERBOUNKA, ESTABROOKS AND JOHN DOES 1-10*

171.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

172.    Article I, Section 1 of the New Jersey Constitution encompasses a substantive component which prohibits officials' actions that shock the conscience and/or upset the balance of "ordered liberty."

173.    DiLeo, acting on behalf of the City of Linden, deprived Coello of the aforesaid guaranteed civil rights in the manner in which he conducted the trial and all related proceedings, in the matter of State v. Coello; specifically, including but not limited to conducting proceedings without Coello's counsel present; excluding Coello from the courtroom during adverse witness testimony; and in permitting Estabrooks to serve as the municipal prosecutor under the facts and circumstances present.

174.    DiLeo's imposition of a 30 (thirty) day jail sentence violated Coello's civil rights, as protected by Article I, Section 1 of the New Jersey Constitution. The sentence was entered without affording Coello the right to be heard or to have legal counsel present to advocate on her behalf. Moreover, DiLeo silenced a pastor from the Abundant Life Worship Center who appeared at this hearing to vouch for Coello's substantial compliance with the anger management program. DiLeo, also failed to hold a hearing to ascertain the reasons for the defendant's failure to abide by the sentence or to determine any aggravating or mitigating factors which would warrant imposition of such a sentence.

41

175.   DiLeo's actions as a municipal court judge shock the conscience.

176.   DiLeo acted as the judge, jury and prosecutor in Coello's case. There can be no "ordered liberty" when a municipal judge disregards all law, rules, and regulations to incarcerate accused individuals, here Coello, appearing before him.

177.   DiLeo knowingly transferred all prosecutorial duties to Estabrooks in disregard of the law, rules and regulations governing such transfer. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

178.   Scutari, through his actions and omissions, knowingly transferred all prosecutorial duties to DiLeo and/or other unauthorized individuals such as Estabrooks. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

179.   Gerbounka knew or should have known that DiLeo and/or Scutari would appoint private lawyers to act as municipal prosecutors and/or permitted DiLeo to engage in prosecutorial actions in violations of the law, rules and regulations governing such appointments, yet never corrected or cured these improper practices. These improper practices led to the wrongful conviction, illegal sentencing and incarceration of numerous other individuals appearing before this court, including Coello.

180.   Estabrooks actions as acting prosecutor were egregious. Estabrooks, through her actions and omissions, obtained or secured the role and responsibility to serve as acting prosecutor in the criminal prosecution of Coello, despite her inherent conflict of interest, lack of

42

impartiality and clear appearance of impropriety. Furthermore, after securing the intended conviction of Coello, Estabrooks then initiated and appeared at the post trial-hearing which resulted in the incarceration of Coello, consistent with Estabrooks' request.

181.    Alternatively, at the post-trial hearing, Estabrooks was acting in her capacity as private counsel for Messina, hence, the prosecutorial function fell into the hands of DiLeo in light of the absence of Scutari.

182.    Estabrooks was empowered to so act by virtue of her appointment as prosecutor by DiLeo and Scutari, while at the same time, pursuing ulterior motives to further enhance her representation of Messina in separate legal matter(s).

183.    The actions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 violated clearly established law, rules, and regulations as no reasonable municipal court judge, municipal court prosecutor or supervisor of municipal court administration would believe said actions to be lawful at the time they were done.

184.    DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were acting under color of law and with gross, callous indifference when they engaged in this illicit conduct which deprived Coello of her civil and constitutional rights as guaranteed by Article I, Section 1 of the New Jersey Constitution and as such the aforementioned acts constitute an actionable violation of N.J.S.A. 10:6-1 et seq.

185.    As a direct and proximate result of the aforementioned violations of Coello's constitutional civil rights, she was imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

43

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Louis M.J. DiLeo, Nicholas P. Scutari, Richard J. Gerbounka, Kathleen Estabrooks, and John Does 1-10, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## FIFTH COUNT

### VIOLATIONS OF ARTICLE I, SECTION 12 OF THE NEW JERSEY CONSTITUTION (CRUEL & UNUSUAL PUNISHMENT)

*ACTIONABLE PURSUANT TO N.J.S.A. 10:6-1 ET SEQ. AGAINST DILEO, SCUTARI, GERBOUNKA, ESTABROOKS AND JOHN DOES 1-10*

186.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length

187.    Article I, Section 12 of the New Jersey Constitution precludes the imposition of "cruel and unusual punishment."

188.    DiLeo's imposition of a 30 (thirty) day jail sentence violated Coello's civil rights, as protected by Article I, Section 12 of the New Jersey Constitution. The sentence was entered without affording Coello the right to be heard or to have legal counsel present to advocate on her behalf. Moreover, DiLeo silenced a pastor from the Abundant Life Worship Center who appeared at this hearing to vouch for Coello's substantial compliance with the anger management program. DiLeo, also failed to hold a hearing to ascertain the reasons for the defendant's failure to abide by the sentence or to determine any aggravating or mitigating factors which would warrant imposition of such a sentence.

189.    DiLeo's actions as a municipal court judge shock the conscience.

190.   DiLeo acted as the judge, jury and prosecutor in Coello's case. There can be no "ordered liberty" when a municipal judge disregards all law, rules, and regulations to incarcerate accused individuals, here Coello, appearing before him.

191.   DiLeo knowingly transferred all prosecutorial duties to Estabrooks in disregard of the law, rules and regulations governing such transfer. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

192.   Scutari, through his actions and omissions, knowingly transferred all prosecutorial duties to DiLeo and/or other unauthorized individuals such as Estabrooks. This led to the wrongful conviction, illegal sentencing and incarceration of Coello. Coello's experience was akin to the wrongful convictions, illegal sentencing and incarceration of numerous other individuals appearing as defendants before this court.

193.   Gerbounka knew or should have known that DiLeo and/or Scutari would appoint private lawyers to act as municipal prosecutors and/or permitted DiLeo to engage in prosecutorial actions in violations of the law, rules and regulations governing such appointments, yet never corrected or cured these improper practices. These improper practices led to the wrongful conviction, illegal sentencing and incarceration of numerous other individuals appearing before this court, including Coello.

194.   Estabrooks actions as acting prosecutor were egregious. Estabrooks, through her actions and omissions, obtained or secured the role and responsibility to serve as acting prosecutor in the criminal prosecution of Coello, despite her inherent conflict of interest, lack of impartiality and clear appearance of impropriety. Furthermore, after securing the intended

conviction of Coello, Estabrooks then initiated and appeared at the post trial-hearing which resulted in the incarceration of Coello, consistent with Estabrooks' request.

195.    Alternatively, at the post-trial hearing, Estabrooks was acting in her capacity as private counsel for Messina, hence, the prosecutorial function fell into the hands of DiLeo in light of the absence of Scutari.

196.    Estabrooks was empowered to so act by virtue of her appointment as prosecutor by DiLeo and Scutari, while at the same time, pursuing ulterior motives to further enhance her representation of Messina in separate legal matter(s).

197.    The actions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 violated clearly established law, rules, and regulations as no reasonable municipal court judge, municipal court prosecutor or supervisor of municipal court administration would believe said actions to be lawful at the time they were done.

198.    DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were acting under color of law and with gross, callous indifference when they engaged in this illicit conduct which deprived Coello of her civil and constitutional rights as guaranteed by Article I, Section 12 of the New Jersey Constitution and as such the aforementioned acts constitute an actionable violation of N.J.S.A. 10:6-1 et seq.

199.    As a direct and proximate result of the aforementioned violations of Coello's constitutional civil rights, she was imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Louis M.J. DiLeo, Nicholas P. Scutari, Richard J. Gerbounka, Kathleen Estabrooks, and John Does 1-10, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## SIXTH COUNT

## CONSPIRACY TO VIOLATE CIVIL RIGHTS

### *ACTIONABLE PURSUANT TO 42 U.S.C. § 1985 AGAINST DILEO, SCUTARI, GERBOUNKA, ESTABROOKS AND JOHN DOES 1-10*

200.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

201.    DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were acting in concert, within the scope of their employment and/or as agents on behalf of the City of Linden, and under color of law. Specifically, they conspired amongst themselves and/or with other individuals to conduct municipal court proceedings in a manner to deprive litigants, including Coello, of their clearly established federal and state constitutional rights, as alleged above.

202.    In furtherance of the conspiracy, DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 engaged in and facilitated numerous overt acts, including but not limited to initiating, maintaining, pursuing, and/or pressing criminal proceedings against Coello without probable cause, the denial of the right to counsel to Coello; the denial of rights to confront witnesses; the assignment of Estabrooks as prosecutor; and in otherwise acting in such a manner as to deprive Coello of her constitutionally protected civil rights, leading to her imprisonment.

47

203.     To fill the void left at prosecutor as a result of Scutari's relinquishment of his prosecutorial duties and his pattern and practice of so doing, the prosecutorial duties were unlawfully transferred to and/or usurped by Estabrooks and DiLeo

204.     All of the aforementioned acts and omissions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were done with gross and callous indifference and in a knowing manner.

205.     All of the aforementioned acts and omissions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were carried out, consistent with, governmental policies, regulations, customs and practices, which were tolerated and/or tacitly approved by Gerbounka, City of Linden, John Does 1-10 and/or ABC Entities 1-10.

206.     As a direct and proximate result of the aforementioned conspiracy, Coello's constitutional civil rights were violated. She has suffered a loss of liberty, having been imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Louis M.J. DiLeo, Nicholas P. Scutari, Richard J. Gerbounka, Kathleen Estabrooks, and John Does 1-10, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## SEVENTH COUNT

## CIVIL CONSPIRACY

### *ACTIONABLE PURSUANT TO NEW JERSEY STATE LAW AGAINST DILEO, SCUTARI, GERBOUNKA, ESTABROOKS AND JOHN DOES 1-10*

207.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

208.    DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were acting in concert, within the scope of their employment and/or as agents on behalf of the City of Linden, and under color of law. Specifically, they conspired amongst themselves and/or with other individuals to conduct municipal court proceedings in a manner to deprive litigants, including Coello, of their clearly established federal and state constitutional rights, as alleged above.

209.    In furtherance of the conspiracy, DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 engaged in and facilitated numerous overt acts, including but not limited to initialing, maintaining, pursuing, and/or pressing criminal proceedings against Coello without probable cause, the denial of the right to counsel to Coello; the denial of rights to confront witnesses; the assignment of Estabrooks as prosecutor; and in otherwise acting in such a manner as to deprive Coello of her constitutionally protected civil rights, leading to her imprisonment.

210.    To fill the void left at prosecutor as a result of Scutari's relinquishment of his prosecutorial duties and his pattern and practice of so doing, the prosecutorial duties were unlawfully transferred to and/or usurped by Estabrooks and DiLeo

211.    All of the aforementioned acts and omissions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were done with gross and callous indifference and in a knowing manner.

49

212.    All of the aforementioned acts and omissions of DiLeo, Scutari, Estabrooks, Gerbounka and/or John Does 1-10 were carried out, consistent with, governmental policies, regulations, customs and practices, which were tolerated and/or tacitly approved by Gerbounka, City of Linden, John Does 1-10 and/or ABC Entities 1-10.

213.    As a direct and proximate result of the aforementioned conspiracy, Coello's constitutional civil rights were violated. She has suffered a loss of liberty, having been imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Louis M.J. DiLeo, Nicholas P. Scutari, Richard J. Gerbounka, Kathleen Estabrooks, and John Does 1-10, jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## EIGHTH COUNT

### GOVERNMENTAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS CAUSED BY ESTABLISHED POLICIES, PROCEDURES, CUSTOMS AND PRACTICES

#### *ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST CITY OF LINDEN, GERBOUNKA, JOHN DOES 1-10 AND ABC ENTITIES 1-10*

214.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

215.    The City of Linden and Gerbounka knew or should have known that there were multiple unlawful and unconstitutional acts committed on a regular basis by DiLeo and Scutari.

The City of Linden and Gerbounka knew or should have known that DiLeo and Scutari maintained a culture of wrongdoing in which individuals such as Coello were routinely wrongfully convicted, illegally incarcerated and deprived of fundamental rights afforded to them under both the Federal and State Constitutions. Despite knowing of this culture of wrongdoing, neither the City of Linden nor Gerbounka took any remedial action to prevent such wrongdoing by DiLeo and Scutari.

216.    The City of Linden and Gerbounka, were warned of the improper and unconstitutional conduct of DiLeo, Scutari and John Does 1-10. Specifically, these defendants were notified that it was Scutari's custom and practice to leave court prior to the court session being finished and/or not fulfilling his responsibilities as municipal court prosecutor. Furthermore, DiLeo and Scutari agreed, conspired and acted accordingly to allow Scutari to abandon his prosecutorial duties to DiLeo and/or other unauthorized individuals, including Estabrooks. Additionally, these defendants were aware that the manner in which DiLeo conducted court proceedings consistently violated individuals' constitutional rights, including but not limited to unlawfully depriving defendants of legal representation and entering unjust and unlawful sentences.

217.    The City of Linden and Gerbounka, through their actions and omissions permitted the Linden Municipal Court, through their agents, servants and/or employees, to initiate, maintain, pursue, and/or press criminal proceedings against individuals without probable cause,

218.    All of the aforementioned acts and omissions of DiLeo, Scutari, Estabrooks and other agents, servants and/or employees of Linden Municipal Court in violating Coello's constitutional rights, were directly and proximately caused by official governmental policies,

regulations, and/or customs and practices, tolerated and/or tacitly approved by Gerbounka, the City of Linden, John Does 1-10 and/or ABC Entities 1-10.

219.    As a direct and proximate result of the aforementioned violations of Coello's constitutional civil rights, she has suffered a loss of liberty, having been imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants City of Linden, Richard J. Gerbounka, John Does 1-10, and ABC Entities 1-10 jointly and severally, for compensatory damages with interest; punitive damages; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## NINTH COUNT

## MALICIOUS PROSECUTION

### ACTIONABLE PURSUANT TO 42 U.S.C. § 1983 AGAINST KATHLEEN ESTABROOKS AND JOHN DOES 1-10

220.    Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

221.    Estabrooks investigated, initiated, maintained, pursued, and/or pressed criminal proceedings against Coello.

222.    The conviction obtained by Estabrooks against Coello has been vacated and expunged from Coello's record by way of Order and written opinion of Judge Inacio dated February 26, 2018, and subsequent judicial Orders. The criminal proceedings have therefore terminated in Coello's favor.

223. Estabrooks investigated, initiated, maintained, pursued, and/or pressed criminal proceedings against Coello without probable cause.

224. Estabrooks had malicious motive to investigate, initiate, maintain, pursue, and/or press criminal charges including but not limited to utilizing the gains she realized in the criminal prosecution for the benefit of her client Messina in separate legal matters involving Coello's then-boyfriend, Figueroa, including but not limited UNN-FD-20-528-97; UNN-FV-20-2122-99, UNN-FV-20-2127-00 and UNN-FV-20-1102-08.

225. As a direct and proximate result of the Estabrooks' aforementioned actions and omissions, Coello was deprived of her liberty including imprisonment for eighteen days.

226. As a direct and proximate result of the aforementioned violations of Coello's constitutional civil rights, she has suffered a loss of liberty, having been imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Kathleen Estabrooks and John Does 1-10, jointly and severally, for compensatory damages with interest; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## TENTH COUNT

### MALICIOUS PROSECUTION

#### ACTIONABLE PURSUANT TO NEW JERSEY STATE LAW AGAINST KATHLEEN ESTABROOKS AND JOHN DOES 1-10

227. Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

228.    Estabrooks investigated, initiated, maintained, pursued, and/or pressed criminal proceedings against Coello.

229.    The conviction obtained by Estabrooks against Coello has been vacated and expunged from Coello's record by way of Order and written opinion of Judge Inacio dated February 26, 2018, and subsequent judicial Orders. The criminal proceedings have therefore terminated in Coello's favor.

230.    Estabrooks investigated, initiated, maintained, pursued, and/or pressed criminal proceedings against Coello without probable cause.

231.    Estabrooks had malicious motive to investigate, initiate, maintain, pursue, and/or press criminal charges including but not limited to utilizing the gains she realized in the criminal prosecution for the benefit of her client Messina in separate legal matters involving Coello's then-boyfriend, Figueroa, including but not limited UNN-FD-20-528-97; UNN-FV-20-2122-99, UNN-FV-20-2127-00, and UNN-FV-20-1102-08.

232.    As a direct and proximate result of the aforementioned violations of Coello's constitutional civil rights, she has suffered a loss of liberty, having been imprisoned for eighteen days, has and will continue to suffer severe and permanent injuries, including emotional distress and mental anguish, has and will continue to suffer the loss of enjoyment of life, has been deprived of her civil and constitutional rights, and has sustained other damages.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Kathleen Estabrooks and John Does 1-10, jointly and severally, for compensatory damages with interest; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## ELEVENTH COUNT

## VICARIOUS LIABILITY

### *ACTIONABLE AGAINST KATHLEEN ESTABROOKS, P.C. AND JOHN DOES 1-10*

233.   Plaintiff repeats and realleges each and every allegation heretofore pled as though fully set forth herein at length.

234.   At all times relevant herein, Estabrooks was working in the scope of her professional employment as an agent, partner and/or principal of Kathleen Estabrooks, P.C. and/or ABC Entities 1-10.

235.   Pursuant to the principles of agency and respondeat superior, Kathleen Estabrooks, P.C. and/or ABC Entities 1-10 are liable for the actions of Estabrooks and any and all damages awarded to Coello.

WHEREFORE, plaintiff Yasmine Coello demands judgment against defendants Kathleen Estabrooks, P.C. and ABC Entities 1-10 jointly and severally, for compensatory damages with interest; attorneys' fees, costs of suit and for such other and further relief as allowable by law and as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Beth G. Baldinger, Esq. is hereby designated as trial counsel in the above captioned matter.

55

## CERTIFICATION

I have been retained to represent plaintiff Yasmine Coello in connection with the within matter. I hereby certify that to the best of my knowledge the matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration or administrative proceeding. There are no other parties of whom I am presently aware who should be joined in this action.

The defendants herein have been served with a Notice of Tort Claim pursuant to N.J.S.A. 59:9-1, et. seq., and plaintiff does herein reserve her right to seek to amend this action to add state law claims as against these defendants after expiration of the 6-month period of time as this Court has supplemental jurisdiction over such state law claims.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiffs

BY:   _/s/ Beth G. Baldinger_
         BETH G. BALDINGER

Dated:  July 1, 2020

LAW OFFICES OF JOSHUA F. MCMAHON, LLC
Attorneys for Plaintiffs

BY:   _/s/ Joshua F. McMahon_
         JOSHUA F. MCMAHON

Dated:  July 1, 2020

56

# EXHIBIT

# A

10/07/2016    15:06 KATHLEEN B ESTABROOKS ESQ.                    (FAX)908 276 0073                    P.006/009
Michael Blacker          908 922 6918          02/26/07 04:20pm  P. 002

## RULE 7:8-7(b) CERTIFICATION APPLICATION FOR APPOINTMENT AS PRIVATE PROSECUTOR

State of New Jersey vs.    Jasmine Coello for Shirley Messina
Docket Number(s):    7-001204        SC2007-007130
Charge(s):    -    Harrassment - 2C:34-4a

Attorney Information:
Name:    Kathleen B. Estabrooks Esquire
Address    524 South Avenue East, P.O. Box 1844
           Cranford, NJ 07016
Telephone Number:    (908) 276-2277

This Certification is supplied to the __Linden__
Municipal Court, pursuant to the provisions of R. 7:8-7(b) and State v. Storm, 141 N.J. 245 (1995) to provide the court and the prosecutor with all facts that may forseeably affect the fairness of the proceedings to enable the court to determine whether I may be appointed as an impartial private prosecutor for Shirley Messina
_____, the complaining witness in the above matter.

1. (Please circle the applicable letter). The complaining witness is (a) an individual, (b) a business (please describe): _____

or (c) an entity with its own police department (please describe): _____

2. There is no actual conflict of interest arising from my representation of, and fee arrangement with, the complaining witness. Check if correct. [X] If not, please explain: _____

3. The municipal prosecutor has elected not to conduct the prosecution. Check if correct. [ ] If not, please explain: _____

4. The defendant is or is expected to be represented by counsel. [ ] Yes  [ ] No  [X] Unknown. Notice has been given to defendant's attorney. [ ] Yes  [ ] No

5. There is no civil litigation, existing or anticipated, between the complaining witness and the defendant concerning the same or similar facts as are contained in the complaint. In the event of such civil litigation, I have informed the complaining witness that neither I nor any member of my firm will undertake the complaining witness' representation in that matter. Check if correct. [X] If not, please explain: _____

6. There are no other facts that could reasonably affect the impartiality of the private prosecutor and the fairness of the proceedings or otherwise create an appearance of impropriety. Check if correct. [X] If not, please explain: _____

Comments: _____

Please attach additional sheets, if necessary.

### CERTIFICATION IN LIEU OF OATH

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

February 26, 2007                         _____
Date                                      Name of Applicant
                                          KATHLEEN B. ESTABROOKS ESQ.

(February, 1999)

# EXHIBIT

# B

# ADMINISTRATIVE OFFICE OF THE COURTS
## STATE OF NEW JERSEY

**GLENN A. GRANT, J.A.D.**
ACTING ADMINISTRATIVE
DIRECTOR OF THE COURTS



**RICHARD J. HUGHES**
**JUSTICE COMPLEX**
PO BOX 037
TRENTON, NEW JERSEY 08625-0037

[Questions or comments may be
directed to 609-292-4638.]

**Directive # 13-08**
(Supersedes Attachment 3 of
Directive #13-05)

| | |
|---|---|
| **TO:** | **ASSIGNMENT JUDGES**<br>**CRIMINAL PRESIDING JUDGES** |
| **FROM:** | **GLENN A. GRANT, J.A.D.** |
| **SUBJ:** | **CERTIFICATION APPLICATION FOR APPOINTMENT OF A PRIVATE PROSECUTOR** |
| **DATE:** | **OCTOBER 8, 2008** |

This Directive reissues the Certification Application for Appointment of a Private Prosecutor and supersedes Attachment 3 of Directive #13-05 that was previously promulgated. No changes have been made to this form. English and English-Spanish versions of the form are included.

The form also will be posted separately on the forms page of the Judiciary Internet website at http://www.judiciary.state.nj.us/forms.htm.

Any questions or comments regarding this Directive, or the appended form, may be directed to Assistant Director Joseph J. Barraco, Esq., at (609) 292-4638.

Attachment

cc:    Chief Justice Stuart Rabner
       Attorney General Anne Milgram
       Public Defender Yvonne Smith Segars
       County Prosecutors
       Deborah Gramiccioni, DCJ Director
       AOC Directors and Assistant Directors
       Regional Deputy Public Defenders

       Trial Court Administrators
       Criminal Division Managers
       Steven D. Bonville, Esq., Special
          Assistant
       Vance D. Hagins, Esq.
       John Wieck
       Melaney S. Payne, Esq.

# ATTACHMENT 1

## CERTIFICATION APPLICATION FOR APPOINTMENT OF A PRIVATE PROSECUTOR

## ENGLISH AND ENGLISH-SPANISH VERSIONS



**New Jersey Judiciary**

## Certification Application for Appointment as Private Prosecutor

State of New Jersey vs. _____

Docket Number(s): _____

Charge(s) _____

Attorney Information:

Name: _____

Address: _____
_____

Telephone Number: _____

This Certification is supplied to the _____ Superior Court, pursuant to the provisions of *R.* 3:23-9(d) and *State v. Storm*, 141 *N.J.* 245 (1995) to provide the court and the prosecutor with all facts that may foreseeably affect the fairness of the proceedings to enable the court to determine whether I may be appointed as an impartial private prosecutor for _____, the complaining witness in the above matter.

1.  (Please circle the applicable letter).  The complaining witness is:
    (a) an individual,    (b) a business,    or    (c) an entity with its own police department
                          (please describe):              (please describe):

    _____

    _____

2.  There is no actual conflict of interest arising from my representation of, and     ☐
    fee arrangement with, the complaining witness.
    Check if correct.
    If not, please explain:

    _____

    _____

3.  The prosecutor has elected not to conduct the prosecution.     ☐
    Check if correct.
    If not, please explain:

    _____

4.  The defendant is or is expected to be represented by     [YES]    [NO]    [UNKNOWN]
    counsel.

    Notice has been given to defendant's attorney                    [YES]    [NO]

5. There is no civil litigation, existing or anticipated, between the complaining
   witness and the defendant concerning the same or similar facts as are
   contained in the complaint.  In the event of such civil litigation, I have
   informed the complaining witness that neither I nor any member of my firm
   will undertake the complaining witness' representation in that matter.
   Check if correct.                                                           ☐
     If not, please explain:

   _____

   _____

6. There are no other facts that could reasonably affect the impartiality of the
   private prosecutor and the fairness of the proceedings or otherwise create an
   appearance of impropriety.
   Check if correct.                                                           ☐
     If not, please explain:

   _____

   _____

Comments:

_____

_____

Please attach additional sheets if necessary.


## CERTIFICATION IN LIEU OF OATH

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made
by me are willfully false, I am subject to punishment.

Date: _____    Name of Applicant: _____



**Poder Judicial de Nueva Jersey**
New Jersey Judiciary

**Certificación y solicitud de designación como fiscal privado**
**Certification Application for Appointment as Private Prosecutor**

Estado de Nueva Jersey contra _____
State of New Jersey vs.

Número(s) de Expediente(s) _____
Docket Number(s):

Cargo(s) _____
Charge(s)

Información sobre el Abogado:
Attorney Information:

Nombre y apellido: _____
Name:

Dirección: _____
Address: _____

Número de Teléfono: _____
Telephone Number:

La presente Certificación se presenta al Tribunal Superior de _____ conforme a lo que disponen *R.* 3:23-9(d) y *State v. Storm,* 141 *N.J.* 245 (1995) para informar al juez y al fiscal de todos los hechos que se prevea puedan afectar la equidad de los procedimientos y permitir que el juez determine si me puede designar fiscal privado imparcial para _____, el testigo denunciante en el asunto citado más arriba.

This Certification is supplied to the _____ Superior Court, pursuant to the provisions of *R.* 3:23-9(d) and *State v. Storm,* 141 *N.J.* 245 (1995) to provide the court and the prosecutor with all facts that may foreseeably affect the fairness of the proceedings to enable the court to determine whether I may be appointed as an impartial private prosecutor for _____, the complaining witness in the above matter.

1. (Sírvase marcar con un círculo la letra que aplica). El testigo denunciante es:
   (Please circle the applicable letter). The complaining witness is:

   (a)  un individuo,          (b)  un negocio          or     (c)  una entidad con su propia jefatura de
        an individual,              (sírvase describirlo):           policía (sírvase describirla):
                                    a business,                      an entity with its own police department
                                    (please describe)                (please describe):

   _____

   _____

Formulario enmendado promulgado por la directriz #13-08 (10/08/2008), CN 10202-English-Spanish
Revised Form Promulgated by Directive #13-08 (10/08/2008), CN 10202-English-Spanish

página 1 de 3
page 1 of 3

2. No existe ningún conflicto de intereses proveniente de mi representación del ☐
   testigo denunciante ni del acuerdo de honorarios con él.
   Marque la casilla si es cierto.
   > There is no actual conflict of interest arising from my representation of, and
   > fee arrangement with, the complaining witness.
   > Check if correct.

   De lo contrario, sírvase dar una explicación:
   > If not, please explain:

   _____

   _____

3. El fiscal ha optado por no dirigir el enjuiciamiento. ☐
   Marque la casilla si es cierto.
   > The prosecutor has elected not to conduct the prosecution.
   > Check if correct.

   De lo contrario, sírvase dar una explicación:
   > If not, please explain:

   _____

4. Al acusado lo representa, o se espera que lo      [Sí/Yes]      [No/No]      [No se sabe/
   represente, un abogado.                                                      Unknown]
   > The defendant is or is expected to be represented by
   > counsel.

   Se ha notificado al abogado del acusado                          [Sí/Yes]      [No/No]
   > Notice has been given to defendant's attorney

5. No existe ni se prevé ningún litigio civil entre el testigo denunciante y el ☐
   acusado con respecto a los hechos de la denuncia o hechos similares. Si llegara
   a ocurrir tal litigio civil, he informado al testigo denunciante que ni yo ni
   ningún miembro de mi bufete lo representaremos en ese asunto.
   Marque la casilla si es cierto.
   > There is no civil litigation, existing or anticipated, between the complaining witness and the
   > defendant concerning the same or similar facts as are contained in the complaint. In the
   > event of such civil litigation, I have informed the complaining witness that neither I nor any
   > member of my firm will undertake the complaining witness' representation in that matter.
   > Check if correct.

   De lo contrario, sírvase dar una explicación:
   > If not, please explain:

   _____

   _____

6. No existen otros hechos que razonablemente podrían afectar la imparcialidad del fiscal privado y la equidad de los procedimientos o de otra forma crear la apariencia de incorrección.
   Marque la casilla si es cierto.

   There are no other facts that could reasonably affect the impartiality of the private prosecutor and the fairness of the proceedings or otherwise create an appearance of impropriety.  Check if correct.

   De lo contrario, sírvase dar una explicación.
   If not, please explain:

   _____

   _____

Comentarios
   Comments:

   _____

   _____

Sírvase anexar hojas adicionales si son necesarias.
   Please attach additional sheets if necessary.

## CERTIFICACIÓN EN LUGAR DEL JURAMENTO
### CERTIFICATION IN LIEU OF OATH

Por la presente certifico que son ciertas las declaraciones anteriores hechas por mí.  Estoy consciente de que estaré sujeto a un castigo si alguna de ellas es intencionalmente falsa.

   I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Fecha: _____        Nombre y apellido del solicitante: _____
   Date:                         Name of Applicant:

# EXHIBIT

# C

02/26/2018  11:08     732-381-9630          CLARK COURT              PAGE  01/05

02-26-18;09:49AM;ANTONIO INACIO, ESQ.                    ;7323400801         #  1/  5

Form Prepared by Court

STATE OF NEW JERSEY,             : SUPERIOR COURT OF NEW JERSEY
                                   MUNICIPAL COURT
       Complainant,             : TOWNSHIP OF CLARK

vs.                             : MUNICIPAL COURRT
                                  CITY OF LINDEN
YASMINE COELLO,                 : CASE NO. SC 007130-2007

                                :
       Defendant.                          OPINION
                                :

        This matter has come before this Court via transfer by the Municipal Court of the

City of Linden, New Jersey.  Defendant, Yasmine Coello (n/k/a Yasmine Coello-

Penafiel), through Joshua F. McMahon, Esq., of the law offices of Schiller McMahon,

LLC, on due notice to the adjudicated victim of the complaint, Shirley Messina, Joseph P.

Depa, Jr., Esq., appearing on behalf of the victim, has filed an application, via a post

conviction relief petition, seeking to overturn the sentence imposed against the defendant

in the Linden Municipal Court on March 6, 2007.  The State, through Clark Municipal

Prosecutor, Jon-Henry Barr, Esq., does not oppose this application.

        This Court has considered the papers submitted on behalf of the defendant and the

victim and heard oral argument in this regard on February 14, 2018.  At the outset, this

Court has been limited to a sparse record of the proceedings in the Linden Municipal

Court.  The Linden Municipal Court no longer has a complete file and gleaning what

transpired at the trial and at the sentence in this case is thus made difficult.  The New

Jersey Automated Complaint System ("ACS") discloses that the defendant was charged

I

02/26/2018  11:08    732-381-9630                CLARK COURT                              PAGE  02/05
02-26-18;09:49AM;ANTONIO INACIO, ESQ.                          ;7323400801              #  2/  5

on January 9, 2007 in the City of Linden, New Jersey with a violation of N.J.S.A. 2C:33-34, the petty disorderly persons offense of harassment.

The ACS further discloses that, on March 6, 2007, the defendant either entered a plea of guilty or was found guilty after a trial of the alleged offense and sentenced to a $300.00 fine, $34.00 court costs and thirty (30) days in the Union County jail, the jail sentence being suspended if the defendant attends anger management counseling. The next entry in the ACS is on January 15, 2008 indicating that the defendant was committed to the Union County jail for thirty (30) days and released on February 3, 2008 having served eighteen (18) days of the original sentence.

The initial issue before this Court is that the petition filed by the defendant is beyond the five (5) year proscription under R. 7:10-2(b)(2). The defendant argues that the application is made to correct an illegal sentence, which has no time bar, and, on the other grounds, that is, the "structural error" made by the Linden Municipal Court in permitting the prosecution of this case by private counsel, not the Linden Municipal prosecutor, in violation of State v. Storm, 141 N.J. 245 (1995) and R. 7:8-7(b). The defendant's supporting letter brief dated January 15, 2008 asserts that there was "… no other indication that the Municipal Prosecutor declined to prosecute", and, there is an absence of a cross complaint filed by the defendant against the victim The defendant has provided this Court with a copy of the "Storm Certification" executed by the victim's private counsel which at paragraph 3 where the provision that "[t]he municipal prosecutor has elected not to conduct the prosecution." is not checked. And, there is no record in the Linden Municipal Court file as to whether that court, and pursuant to R. 7:8-7(b), made any findings whatsoever pertinent to the Storm application.

02/26/2018  11:08    732-381-9630          CLARK COURT                          PAGE  03/05
    02-26-18;09:49AM;ANTONIO INACIO, ESQ.                        ;7323400801      #  3/  5

In addition, the issue that this Court finds most troubling is the sentencing of this defendant to a thirty (30) day jail term on a petty disorderly persons offense, albeit couched in terms of a suspension of jail time if the defendant attends anger management counseling. As a government of laws and a civil society, we must remain cognizant, in the context of a criminal sentence, of the presumption against incarceration. And, moreover, the commission of a petty disorderly persons offense in New Jersey is not classified as a crime. The true exercise of judicial power is to have the power and not to use it, or better yet, know when to use it. The record before this Court is devoid of any aggravating or mitigating factors to support a thirty (30) day maximum jail sentence, even if suspended, imposed against this defendant for a conviction of a petty disorderly persons offense. That sentence is repugnant to this Court and begs the question as to why the maximum term of incarceration was appropriate as to this defendant.

Since the incarceration/commitment of this defendant to the Union County jail took place over nine (9) months after the original sentence, this Court can only conclude that the defendant was sent to jail for not complying with the anger management counseling aspect of the sentence. In that case, the defendant should have then been declared in contempt of the court's sentence and a hearing should have been held prior to the defendant's commitment to the county jail to ascertain the reasons for the defendant's failure to abide by the sentence. What if the reasons for the defendant's failure to attend anger management counseling were due to a medical condition or due to financial concerns relative to the payment by the defendant for the anger management counseling? In the absence of the contampt hearing, or the lack of court records, we will never know.

3

02/26/2018  11:08   732-381-9630        CLARK COURT            PAGE  04/05

02-26-18;09:49AM;ANTONIO INACIO, ESQ.                ;7323400801        # 4/ 5

The victim was permitted to be heard in this application and argues that the petition is time barred; that the defendant has not advanced any excusable neglect for having not filed this petition within the time prescribed by the court rule; and, that the sentence of the defendant was not an illegal sentence. Further, the victim asserts will be prejudice if the relief sought by the defendant is granted by then not having seen justice served in the case. The State's position in not opposing the defendant's petition speaks volumes as to what the State views the procedural errors relative to the Storm application and the incarceration of the defendant to be.

The position of the victim does not fall on deaf ears. And, the victim's appearance in this case, after the passing of nearly ten (10) years, not only illustrates the victim's rightful activism but also highlights that the underlying animosity behind this case has not waned much. Query: Is an unjust sentence an illegal sentence? On its face, the sentence by the Linden Municipal Court was not an "illegal sentence". That sentence falls within the proscription of up to a $500.00 fine and up to thirty (30) days in jail for an individual convicted of a petty disorderly persons offense. But was the sentence against this defendant just?

This Court concludes that it was not. Without any determining aggravating and/or mitigating factors warranting the incarceration of this defendant for a petty disorderly persons offense, or for contempt of court, this Court cannot determine the justice in sentencing the defendant to the maximum term under the statute. The victim's understandable desire for justice is outweighed by the fact that this defendant was unjustly sentenced to jail, unjustly spent a minimum of eighteen (18) days in jail and now has the record of this unjust disposition affecting the defendant's life.

02/26/2018  11:08   732-381-9630              CLARK COURT                    PAGE  05/05

02-26-18;09:49AM;ANTONIO INACIO, ESQ.                    ;7323400801        #  5/ 5

Based on all of the foregoing, this Court concludes that the procedural defects surrounding the appointment of private counsel to prosecute the case ab initio, the apparent failure of a contempt hearing being held prior to the incarceration of the defendant, and, this Court's view that an unjust sentence is an illegal sentence, the petition filed on behalf of the defendant is granted and the case is dismissed. However, the imposition of the fine and court costs in the original sentence against the defendant shall remain unaffected.

ANTONIO INACIO, J.M.C.

Dated: February 26, 2018

5

# EXHIBIT

# D

Form Prepared by Court

STATE OF NEW JERSEY,

      Complainant,

      vs.

YASMINE COELLO,

      Defendant.

: SUPERIOR COURT OF NEW JERSEY
  MUNICIPAL COURT
: TOWNSHIP OF CLARK

: MUNICIPAL COURRT
  CITY OF LINDEN
: CASE NO. SC 007130-2007

:

:      **REVISED OPINION**

:

This matter has come before this Court via transfer by the Municipal Court of the City of Linden, New Jersey. Defendant, Yasmine Coello (n/k/a Yasmine Coello-Penafiel), through Joshua F. McMahon, Esq., of the law offices of Schiller McMahon, LLC, on due notice to the adjudicated victim of the complaint, Shirley Messina, Joseph P. Depa, Jr., Esq., appearing on behalf of the victim, has filed an application, via a post conviction relief petition, seeking to overturn the sentence imposed against the defendant in the Linden Municipal Court on March 6, 2007. The State, through Clark Municipal Prosecutor, Jon-Henry Barr, Esq., does not oppose this application.

This Court has considered the papers submitted on behalf of the defendant and the victim and heard oral argument in this regard on February 14, 2018. At the outset, this Court has been limited to a sparse record of the proceedings in the Linden Municipal Court. The Linden Municipal Court no longer has a complete file and gleaning what transpired at the trial and at the sentence in this case is thus made difficult. The New Jersey Automated Complaint System ("ACS") discloses that the defendant was charged

1

03/08/2018  15:47     732-381-9630            CLARK COURT                        PAGE  02/05

on January 9, 2007 in the City of Linden, New Jersey with a violation of N.J.S.A. 2C:33-34, the petty disorderly persons offense of harassment.

The ACS further discloses that, on March 6, 2007, the defendant either entered a plea of guilty or was found guilty after a trial of the alleged offense and sentenced to a $300.00 fine, $34.00 court costs and thirty (30) days in the Union County jail, the jail sentence being suspended if the defendant attends anger management counseling. The next entry in the ACS is on January 15, 2008 indicating that the defendant was committed to the Union County jail for thirty (30) days and released on February 3, 2008 having served eighteen (18) days of the original sentence.

The initial issue before this Court is that the petition filed by the defendant is beyond the five (5) year proscription under R. 7:10-2(b)(2). The defendant argues that the application is made to correct an illegal sentence, which has no time bar, and, on the other grounds, that is, the "structural error" made by the Linden Municipal Court in permitting the prosecution of this case by private counsel, not the Linden Municipal prosecutor, in violation of State v. Storm, 141 N.J. 245 (1995) and R. 7:8-7(b). The defendant's supporting letter brief dated January 15, 2008 asserts that there was "... no other indication that the Municipal Prosecutor declined to prosecute", and, there is an absence of a cross complaint filed by the defendant against the victim. The defendant has provided this Court with a copy of the "Storm Certification" executed by the victim's private counsel which at paragraph 3 where the provision that "[t]he municipal prosecutor has elected not to conduct the prosecution." is not checked. And, there is no record in the Linden Municipal Court file as to whether that court, and pursuant to R. 7:8-7(b), made any findings whatsoever pertinent to the Storm application.

03/08/2018  15:47    732-381-9630         CLARK COURT                    PAGE  03/05

In addition, the issue that this Court finds most troubling is the sentencing of this defendant to a thirty (30) day jail term on a petty disorderly persons offense, albeit couched in terms of a suspension of jail time if the defendant attends anger management counseling. As a government of laws and a civil society, we must remain cognizant, in the context of a criminal sentence, of the presumption against incarceration. And, moreover, the commission of a petty disorderly persons offense in New Jersey is not classified as a crime. The true exercise of judicial power is to have the power and not to use it, or better yet, know when to use it. The record before this Court is devoid of any aggravating or mitigating factors to support a thirty (30) day maximum jail sentence, even if suspended, imposed against this defendant for a conviction of a petty disorderly persons offense. That sentence is repugnant to this Court and begs the question as to why the maximum term of incarceration was appropriate as to this defendant.

Since the incarceration/commitment of this defendant to the Union County jail took place over nine (9) months after the original sentence, this Court can only conclude that the defendant was sent to jail for not complying with the anger management counseling aspect of the sentence. In that case, the defendant should have then been declared in contempt of the court's sentence and a hearing should have been held prior to the defendant's commitment to the county jail to ascertain the reasons for the defendant's failure to abide by the sentence. What if the reasons for the defendant's failure to attend anger management counseling were due to a medical condition or due to financial concerns relative to the payment by the defendant for the anger management counseling? In the absence of the contempt hearing, or the lack of court records, we will never know.

3

Case 2:20-cv-01682-SDW-LDW    Document 27-4    Filed 07/21/20    Page 78 of 91 PageID:
691
Case 2:20-cv-01682-SDW-LDW    Document 23    Filed 07/01/20    Page 77 of 90 PageID: 555
03/06/2018   15:47   732-381-9630         CLARK COURT                    PAGE  04/05

The victim was permitted to be heard in this application and argues that the petition is time barred; that the defendant has not advanced any excusable neglect for having not filed this petition within the time prescribed by the court rule; and, that the sentence of the defendant was not an illegal sentence. Further, the victim asserts will be prejudice if the relief sought by the defendant is granted by then not having seen justice served in the case. The State's position in not opposing the defendant's petition speaks volumes as to what the State views the procedural errors relative to the _Storm_ application and the incarceration of the defendant to be.

The position of the victim does not fall on deaf ears. And, the victim's appearance in this case, after the passing of nearly ten (10) years, not only illustrates the victim's rightful activism but also highlights that the underlying animosity behind this case has not waned much. Query: Is an unjust sentence an illegal sentence? On its face, the sentence by the Linden Municipal Court was not an "illegal sentence". That sentence falls within the proscription of up to a $500.00 fine and up to thirty (30) days in jail for an individual convicted of a petty disorderly persons offense. But was the sentence against this defendant just?

This Court concludes that it was not. Without any determining aggravating and/or mitigating factors warranting the incarceration of this defendant for a petty disorderly persons offense, or for contempt of court, this Court cannot determine the justice in sentencing the defendant to the maximum term under the statute. The victim's understandable desire for justice is outweighed by the fact that this defendant was unjustly sentenced to jail, unjustly spent a minimum of eighteen (18) days in jail and now has the record of this unjust disposition affecting the defendant's life.

4

Based on all of the foregoing, this Court concludes that the procedural defects surrounding the appointment of private counsel to prosecute the case ab initio, the apparent failure of a contempt hearing being held prior to the incarceration of the defendant, and, this Court's view that an unjust sentence is an illegal sentence, the petition filed on behalf of the defendant is granted; the conviction is hereby vacated; and the case is dismissed.  However, the imposition of the fine and court costs in the original sentence against the defendant shall remain unaffected.

ANTONIO INACIO, J.M.C.

Dated:  March 8, 2018

# EXHIBIT

# E

# SUPERIOR COURT OF NEW JERSEY



CHAMBERS OF
JOHN M. DEITCH
JUDGE

COURTHOUSE
ELIZABETH, NEW JERSEY
07207-8001

June 7, 2018

Joshua McMahon, Esq.
Schiller McMahon
123 South Avenue East
Westfield, New Jersey 07080

Joseph Depa, Jr., Esq.
214 Walnut Avenue
P.O. Box 276
Cranford, New Jersey 07016

Re: **State v. Yasmine Coello**
    **Municipal Appeal No. 6212 (Clark Township)**

Dear Counsel:

I have enclosed the Court's June 6, 2018 Decision and Order regarding the above-referenced matter.

If you have any questions, please contact me at (908) 787-1650 Ext. 21129.

Very truly yours,

Hannah Bartges

Hannah Bartges
Law Clerk to the Honorable
John M. Deitch, J.S.C.

cc: Andrea Bermudez, Criminal Case Management
Encls.
HCB/hb



RECEIVED
JUN 11 2018
BY:

NOT FOR PUBLICATION WITHOUT
THE APPROVAL FROM THE COMMITTEE ON OPINIONS
This opinion shall not "constitute precedent or be binding upon any court." Although
it is posted on the internet, this opinion is only binding on the parties in the case and
its use in other cases is limited. R. 1:36-3.

| | | |
|---|---|---|
| STATE OF NEW JERSEY | : | **SUPERIOR COURT OF NEW JERSEY** |
| | : | UNION COUNTY |
| PLAINTIFF(S) | : | LAW DIVISION, CRIMINAL PART |
| vs. | : | MUNICIPAL APPEAL NO. 6212 |
| YASMINE COELLO | : | **DECISION AND ORDER** |
| | : | |
| DEFENDANT(S) : | | |

**FILED**

JUN 0 6 2018

JOHN M. DEITCH,
J.S.C.

Decided: June 6, 2018

Attorney for the State: None
Attorney for Defendant Coello: Joshua F. McMahon, Esq.
Attorney for Shirley Messina: Joseph P. Depa, Jr., Esq.

HONORABLE JOHN M. DEITCH, J.S.C.

## PROCEDURAL POSTURE AND STATEMENT OF FACTS[1]

The underlying dispute between the parties was originally heard and decided
in 2007. The record on appeal does not provide many details concerning the
underlying trial. It appears that Shirley Messina filed a complaint against Yasmine
Coello ("Defendant"). On February 26, 2007, Kathleen Estabrooks, Esq., submitted

---

[1] The following abbreviation will be used to reference the record below throughout this decision:
1T will refer to the transcript of proceedings dated February 14, 2018

1

a "Storm affidavit" for appointment as private prosecutor.[2] The affidavit lacked an answer to question number three, asking if the municipal prosecutor had elected not to conduct the prosecution. Despite this defect, the Court appointed Ms. Estabrooks as a private prosecutor. Judge DiLeo, sitting in Linden, was the trial court judge.

The municipal court found the defendant guilty of harassment under 2C:33-4(a), a petty disorderly persons offence. Defendant was given a sentence requiring anger management counselling. Defendant apparently failed to complete that counselling. As a result, Defendant was re-sentenced to thirty (30) days in jail. Defendant was released after serving eighteen (18) days. Fines and penalties were also imposed.

On November 14, 2016, Defendant filed an application for post-conviction relief. The venue of the application was transferred several times, with the matter finally being heard before the Honorable Judge Antonio Inacio, J.M.C. sitting in

---

[2] The Storm affidavit was created in response to the New Jersey Supreme Court's decision in State v. Storm, 141 N.J. 245 (1995). Recognizing the importance of maintaining the integrity of municipal courts, the Supreme Court requested that "the Committee on Municipal Courts [] recommend guidelines governing the appointment of private prosecutors in those courts." Id. at 255. As a result, R. 7:8-7(b) was promulgated. R. 7:8-7(b) states that:

> The court may permit an attorney to appear as a private prosecutor to represent the State in cases involving cross-complaints. Such private prosecutors may be permitted to appear on behalf of the State only if the court has first reviewed the private prosecutor's motion to so appear and an accompanying certification submitted on a form approved by the Administrative Director of the Courts. The court may grant the private prosecutor's application to appear if it is satisfied that a potential for conflict exists for the municipal prosecutor due to the nature of the charges set forth in the cross-complaints. The court shall place such a finding on the record.

The form refined in the Rule was approved by the Court in Administrative Directive #13-05, which was later superseded by Directive #13-08, and is known colloquially as the Storm affidavit. The Storm affidavit addresses issues of conflicts and "all facts that may foreseeably affect the fairness of the proceedings to enable the court to determine whether [the private attorney] may be appointed as a fair and impartial prosecutor." See Revised Form Promulgated by Directive #13-08 at 1.

Clark on February 14, 2018. The PCR application was argued by Joshua McMahon,

Esq. and consented to by the municipal prosecutor, J.H. Barr, Esq.  Joseph Depa,

Esq. was present as counsel for Ms. Messina and was allowed to address the Court.

At the hearing, the municipal prosecutor took the following position:

> MR. BARR: Judge, I just want to assure the Court that this is –
> this entire issue is something that I really have considered very
> carefully.  I did review submissions of both counsel.  I reviewed
> the facts of the case and yes, my own experience and knowledge
> of this particular judge and the truly extraordinary lengths to
> which the judicial system has gone to excoriate them really for
> what happened.  And as I said, I was – I remember reading the
> Third Circuit opinion and was astonished that they went so far as
> to pierce his judicial immunity.
>
> I feel that the State is completely ill-equipped and we would not
> be serving the interest of justice by opposing Mr. McMahon's
> application.  When you have a letter of contamination this bad—
> you know, It's one thing Judge – I understand what the Court's
> concerned about is, did everything that Judge DiLeo do when he
> was on the bench, is that – is everything contaminated?  And I
> don't' think you should – I don't think any – any attorney should
> be able to sort of make – automatically make that assumption.
> However, in this particular case there is enough that is
> indisputable with respect to how the Storm application was
> incomplete and what happened to this young lady.  It's just too
> much.  The stench is too great.  The interest of justice will not be
> served by seeing a conviction made, and in this Prosecutor's
> view, and I reviewed this by other – I got other prosecutors to
> review that as well.
>
> THE COURT: All right.
>
> Mr. BARR: I just can't do it and I won't.
>
> (1T24:10-1T25:16).

3

After oral argument, Judge Inacio granted Defendant's petition in a "Revised Opinion" dated March 8, 2018.[3]

On March 19, 2018, counsel for Ms. Messina filed a notice of appeal challenging Judge Inacio's decision granting Defendant's petition for post-conviction relief.

On May 1, 2018, criminal case management requested additional documents from Ms. Messina's counsel in compliance with R 3:23-9(d).

Ms. Messina's counsel provided the Court with a Storm affidavit on May 10, 2018.[4]

No brief was filed by counsel for Ms. Messina on that date in contravention of R 3:24(c).

This Court conducted oral argument on June 5, 2018.

## LEGAL STANDARDS & ANALYSES

New Jersey Court Rule 7 governs proceedings at the municipal level. R 7:13-1 provides that "[a]ppeals shall be taken in accordance with R 3:23, 3:24, and 4:74-3, and in extraordinary cases and in the interest of justice, in accordance with R 2:2-2-3(b)".[5] R 3:23 governs appeals from judgments of convictions of municipal courts and R 3:24 governs appeals from orders in courts of limited jurisdictions. Here, Ms.

---

[3] Mr. McMahon's letter of February 27 seeks clarification of Judge Inacio's February 26, 2018 opinion. Mr. Depa's notice of appeal references appeal from a "conviction entered in the Clark municipal court on February 26, 2018." Neither party has provided a February 26, 2018 order, decision, or conviction to this Court.

[4] The Court is in possession of the following submissions: January 15, 2018 letter from Mr. McMahon to Judge Inacio; January 18, 2018 letter from Mr. Depa to Judge Inacio; February 27, 2018 letter from Mr. McMahon to Judge Inacio without exhibits; March 15, 2018 letter from Mr. Depa to Union County Crim. Div. filing appeal; May 1, 2018 letter from Union County Crim. Div. to Mr. Depa; May 10, 2018 letter from Mr. Depa to Union County Crim. Case Management; May 29, 2018 brief filed on behalf of Defendant; May 29, 2018 brief filed on behalf of Ms. Messina.

[5] R 4:74-3 applies to appeals involving penalties imposed at the municipal court level and is not applicable to the case at hand. R 2:2-3(b) allows appeals to the Appellate Division in extraordinary circumstances, but such a case is not present here.

4

Messina is appealing the municipal court's order vacating Defendant's conviction and dismissing the case. Accordingly, R. 3:24 governs the procedure for this matter.

R. 3:24(b) provides as follows:

> The prosecuting attorney may appeal, as of right, a pre-trial or post-trial judgment dismissing a complaint. . . .

The term "prosecuting attorney" is defined several ways in R. 3:23-9. Specifically, R. 3:23-9 states as follows:

> In all appeals under R. 3:23-9 the prosecuting attorney shall be:
>
> (a) The Attorney General, where required by law.
> (b) The municipal attorney, in a case involving a violation of a municipal ordinance.
> (c) The county prosecutor, in all other cases.
> (d) With the assent of the prosecuting attorney and the consent of the court, the attorney for a complaining witness or other person interested in the prosecution may be permitted to act for the prosecuting attorney; provided, however, that the court has first reviewed the attorney certification submitted on a form prescribed by the Administrative Director of the Courts, ruled on the contents of the certification, and granted the attorney's motion to act as private prosecutor for good cause shown. The finding of good cause shall be made on the record.

Municipal prosecutors act under the supervision of the Attorney General and county prosecutors. N.J.S.A. 2B:12-27. Under that statute, they represent the State, county, or municipality in any matter within the jurisdiction of the central municipal court or any other municipal court.

The general rule is that municipal court matters cannot be prosecuted privately and may only be privately prosecuted pursuant to Rule.

"The public policy behind the limitation on who may act as a "prosecuting attorney" is well-established: '[u]nlike private citizens, prosecutors are guided and governed by the Rules of Professional Conduct and our case law to ensure fairness

in the process.'" State v. Bradley, 420 N.J. Super. 138, 142 (2011) (quoting In re Loigman, 183 N.J. 133, 144 (2005)). "Because they are mandated to ensure the fairness of the process, only prosecutors, as defined in the court rules, are authorized to act in cases that may result in incarceration or other penalties of magnitude." Ibid. Such consequences require that prosecution be limited to those more interested in the 'fairness [of] the process' than the vindication of individual interests." Ibid. (quoting In re Loigman 183 N.J. at 144). As a result, in New Jersey "there is simply no circumstance in which a private complainant can act as a prosecuting attorney without the special approval and process provided in Rule 3:23-9(d)." Ibid.

As noted supra., after receiving Ms. Messina's notice of appeal, criminal case management sent correspondence to Ms. Messina's attorney referring him to R. 3:23-9(d) for additional documentation necessary for her appeal. In response, counsel for Mr. Messina sent the Court a "Storm affidavit."

Although a Storm affidavit fulfils the requirements for private prosecution of a municipal complaint under R. 7:8-7(b), it is not sufficient under R. 3:23-9(d). The key difference between the rules being that R. 3:23-9(d) requires the assent of the prosecuting attorney and R. 7:8-7(b) does not. The Court has not received any documentation from counsel for Ms. Messina indicating that the State has agreed to the private prosecution of this matter. Indeed, given the unambiguous statements of the municipal prosecutor on February 14, 2018, this Court finds that the State has not deferred on the matter or assented to private prosecution. Quite to the contrary, the State informed the municipal court that it carefully considered the matter and consented to the Defendant's application in the interest of justice.

On the record provided, this appeal appears to be exactly the type of matter the Rule was designed to prevent, i.e., the vindication of a private interest over the interests of justice determined through prosecutorial discretion.

Counsel for Ms. Messina cannot act as a prosecuting attorney this matter. The appeal is denied based upon a lack of standing.

## CONCLUSION

Ms. Messina's appeal is denied for the above-stated reasons. Defendant's request for sanctions is denied.

JOHN M. DEITCH, J.S.C.

Case 2:20-cv-01682-SDW-LDW   Document 27-4   Filed 07/21/20   Page 89 of 91 PageID:
Case 2:20-cv-01682-SDW-LDW   Document 23   Filed 07/01/20   Page 88 of 90 PageID: 566
702

# EXHIBIT

# F

FILED

NOV 19 2018

DB

PREPARED BY THE COURT        ROBERT KIRSCH
                                                          J.S.C.

| | |
|---|---|
| In the Matter of the Expungement of the Criminal Records of | SUPERIOR COURT OF NEW JERSEY LAW DIVISION UNION COUNTY |
| Yasmine Coello, | DOCKET NUMBER: UNN-351-18 |
| Petitioner. | CRIMINAL ACTION |
| | ORDER |

THIS MATTER having been opened to the court upon the Verified Petition for Expungement of Yasmine Coello, date of birth, June 25, 1975, and it appearing that the requirements for expungement have been satisfied,

IT IS on this 19th day of November, 2018,

ORDERED that the petitioner's request to expunge the January 9, 2007 charge, under Complaint Number SC-2007-007130, of harassment, in violation of N.J.S.A. 2C:33-34, resulting in a dismissal, is hereby granted, pursuant to N.J.S.A. 2C:52-5; and it is further

ORDERED that only where relief was granted any of the above officers or agencies which sent fingerprints and/or any records of the above arrest/conviction/adjudication/ disposition and proceedings to the Federal Bureau of Investigation or any other office or agency shall notify same of this Order and that the agencies designated to retain such records take sufficient precautions to insure that such records and information are not released; and it is further

ORDERED that only where relief was granted, any records, or the information therein, shall not be released except as provided under the provision of N.J.S.A. 2C:52-1, et seq. and that the persons designated to retain control over expunged records take sufficient precautions to insure that such records and information are not released; and it is further

ORDERED that only where relief was granted, in response to requests for information or records, the court office or law enforcement agency shall reply with respect to the arrest/conviction/adjudication/disposition, which is the subject of this Order, that there is no record; and it is further

NOV 2 6 2018

Case 2:20-cv-01682-SDW-LDW    Document 27-4    Filed 07/21/20    Page 91 of 91 PageID:
Case 2:20-cv-01682-SDW-LDW    Document 23    Filed 07/01/20    Page 90 of 90 PageID: 568
704

**ORDERED** that only where relief was granted, the arrest/conviction/ adjudication/disposition, which is the subject of this Order, shall be deemed, in contemplation of law, not to have occurred, and the Petitioner may answer accordingly any question relating to this occurrence except as provided in N.J.S.A. 2C:52-27; and it is further

**ORDERED** that this Order does not expunge the records contained in the Controlled Dangerous Substances Registry created pursuant to P.L. 1970, c. 227 (C.26:2G-17 et seq.) or the registry created by the Administrative Office of the Courts pursuant to N.J.S.A. 2C:43-21; and it is further

**ORDERED** that a copy of this Order shall be served within ten (10) days to all appropriate parties and agencies.

Robert Kirsch, J.S.C.