<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YASMINE COELLO,<br><br>                    Plaintiff,<br><br>v.<br><br>LOUIS M.J. DILEO, et al.,<br><br>                    Defendants. | Civil Action No: 20-1682 (SDW)(LDW)<br><br>**OPINION**<br><br>September 21, 2023 |

**WIGENTON**, District Judge.

Before this Court is Defendants Louis M.J. DiLeo, Nicholas P. Scutari, Richard J. Gerbounka, and City of Linden's ("City") (collectively, "Linden Defendants") Motion to Dismiss (D.E. 28, 67 ("Motion"))[1] Plaintiff Yasmine Coello's ("Plaintiff") First Amended Complaint (D.E. 23 ("FAC")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motion is **DENIED**.

## I.        BACKGROUND AND PROCEDURAL HISTORY

On January 17, 2007, non-party Shirley Messina ("Messina") filed a citizen's complaint in Linden Municipal Court against Plaintiff, alleging that Plaintiff had harassed her. (D.E. 23 ¶¶ 17–18.) At the time, Plaintiff was dating David Figueroa ("Figueroa"), Messina's ex-boyfriend. (*Id.*

---

[1] The Linden Defendants' original Motion to Dismiss was filed on July 23, 2020. (D.E. 28.) After the case was remanded by the Third Circuit (D.E. 62), the Linden Defendants filed supplemental briefing to this Court in support of their Motion on April 24, 2023. (D.E. 67, 69.)

¶¶ 18–20.)  The charge was initially dismissed, but later reinstated, although neither the reason for the dismissal nor the reinstatement are included in the record.  (*Id.* ¶¶ 17–22.)  On February 26, 2007, Kathleen Estabrooks, Esq. ("Estabrooks")[2], who was "simultaneously representing Messina in other civil actions against Figueroa . . . in Superior Court of Union County, Family Court," sought appointment to serve as the acting prosecutor of Messina's complaint.  (*Id.* ¶¶ 23–24.)  Prior to being appointed, Estabrooks was required to submit an affidavit disclosing any conflicts of interest, indicating whether the municipal prosecutor, Nicholas P. Scutari ("Scutari"), had elected not to prosecute the matter, and averring that there were "no other facts that could reasonably affect the impartiality of the private prosecutor and the fairness of the proceedings or otherwise create an appearance of impropriety."  (*Id.* ¶¶ 24–26.)  Estabrooks' affidavit did not disclose that she was representing Messina in Family Court and did not certify that Scutari had declined to prosecute Plaintiff's case.  (*Id.* ¶ 27, Ex. A.)

On March 6, 2007, Municipal Court Judge Louis M.J. DiLeo ("DiLeo") "presided over the trial in the matter of *State v. Coello*, SC 2007-007130, with Estabrooks serving as acting prosecutor."  (*Id.* ¶ 33.)  Plaintiff alleges that during the trial, and over her counsel's objection, "DiLeo had [her] removed from the courtroom while the prosecution's witness testified" and also cross-examined her.  (*Id.* ¶¶ 34–35.)  DiLeo found Plaintiff guilty "of the petty disorderly persons offense of [h]arassment pursuant to N.J.S.A. 2C:33-4(a) and sentenced her to a $300.00 fine, $34.00 in court costs and thirty (30) days in jail . . . ."  (*Id.* ¶ 37.)  Plaintiff's jail sentence was suspended "on the condition that [she] attend twenty-six (26) weeks of anger management counseling . . . ."  (*Id.*)

---

[2] Estabrooks was, at all relevant times, the "principle [*sic*], agent and/or employee" of Defendant Kathleen Estabrooks, P.C., a "duly formed professional corporation of the State of New Jersey providing legal services."  (D.E. 23 ¶ 10.)

On or about January 7, 2008, Estabrooks allegedly sent a letter to DiLeo requesting confirmation that Plaintiff had completed the anger management counseling and informing the court that Messina had filed another complaint against Plaintiff. (*Id.* ¶ 38.) In response, DiLeo held a post-trial hearing on January 16, 2008, at which Plaintiff appeared without counsel, Estabrooks appeared as counsel for Messina, and no municipal prosecutor appeared. (*Id.* ¶¶ 39–41.) At this hearing, DiLeo allegedly assumed the role of a municipal prosecutor and did not conduct any inquiry concerning whether Plaintiff had waived her right to counsel as required by *State v. Crisfali*, 128 N.J. 499 (1992). (*Id.* ¶¶ 42, 44.) DiLeo then reinstated Plaintiff's jail sentence, and Plaintiff began her incarceration on the same day. (*Id.* ¶¶ 45–51.)

Plaintiff hired new counsel, who filed a motion for reconsideration of sentence on January 18, 2008. (*Id.* ¶¶ 52–56.) Estabrooks opposed the motion, but no formal opposition was submitted by the municipal prosecutor. (*Id.* ¶¶ 57–60.) DiLeo held oral argument on January 30, 2008, although the record does not reflect what occurred, and Plaintiff was freed on February 3, 2008, after serving eighteen days in jail. (*Id.* ¶¶ 58–61.)

In 2016, Plaintiff moved to vacate her conviction. (*Id.* ¶ 63.) No opposition was filed, and the motion was granted on February 26, 2018. (*Id.* ¶¶ 63–65, Ex. C, D.) Plaintiff's record was expunged on November 19, 2018. (*Id.* ¶¶ 71–72, Ex. F.)

On February 18, 2020, Plaintiff filed suit in this Court alleging that all Defendants' actions in the municipal court proceedings violated her constitutional and statutory rights. (D.E. 1.) On July 1, 2020, Plaintiff filed the FAC. (D.E. 23.) All then-named Defendants[3] moved to dismiss in July 2020 and the parties timely completed briefing. (D.E. 27–32.) On October 21, 2020, this

---

[3] In addition to the Linden Defendants, Plaintiff brought this civil rights action against Estabrooks, Kathleen Estabrooks, P.C. (together with Estabrooks, "Estabrooks Defendants"), John Doe(s) 1-10, and ABC Entities 1-10. Plaintiff has since settled with the Estabrooks Defendants. (D.E. 48–49.)

Court dismissed with prejudice Plaintiff's § 1983 and § 1985 claims (Counts One to Eight) as time-barred but denied the motions to dismiss as to Plaintiff's remaining claims (Counts Nine to Eleven).  (D.E. 33–34.)  Plaintiff's motion for reconsideration (D.E. 35) was also denied (D.E. 40), and Plaintiff appealed.  (D.E. 52.)

On August 8, 2023, the Third Circuit vacated this Court's dismissal of Plaintiff's § 1983 and § 1985 claims (D.E. 62), holding they were timely filed pursuant to the holding of *Heck v. Humphrey*, 512 U.S. 477, 489 (1994).  *See Coello v. DiLeo*, 43 F.4th 346, 356 (3d Cir. 2022). Accordingly, the case was remanded for this Court to consider the other arguments raised by the Linden Defendants in their motion to dismiss, including whether any of those Defendants is entitled to immunity from this action.  *See id*.  The parties timely completed supplemental briefing as ordered by Magistrate Judge Leda D. Wettre.  (D.E. 67–69.)

## II.   <u>LEGAL STANDARD</u>

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a showing, rather than a blanket assertion, of an entitlement to relief" (internal quotation marks and citation omitted)).

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citation omitted).  However, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*

## III.   <u>DISCUSSION</u>

The FAC asserts various claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and New Jersey state law, for violations of Plaintiff's rights pursuant to the United States and New Jersey constitutions.  Specifically, Plaintiff alleges that the Linden Defendants:  violated her right to counsel, right to confront witnesses, and right to a fair trial (Counts One and Two); violated her right to substantive due process (Counts Three through Five); and conspired to violate her civil rights (Counts Six and Seven).  In addition, Plaintiff contends that the City and Gerbounka should be held liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for violating her constitutional rights (Count Eight).

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  That statute, standing alone, does not create any rights; it merely provides a means to redress violations of federal law committed by state actors.[4]  *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Meanwhile, 42 U.S.C. § 1985(3) provides a remedy against private conspiracies and conspiracies by state actors.[5]  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)  Section 1985(3) creates a private right of action for persons injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).

The Linden Defendants argue in support of their Motion that all claims should be dismissed, asserting immunities for DiLeo and Scutari and claiming that Plaintiff has failed to state a claim upon which relief can be granted against Gerbounka and the City.  This Court will address each of their arguments in turn.

### A.  Sovereign Immunity (Counts I to VII)

Defendants DiLeo and Scutari move to dismiss all claims against them, arguing that, as a municipal judge and a municipal prosecutor, they are entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution.  *See U.S. Const. amend. XI*; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  Both DiLeo and Scutari failed to meet their burden of showing that they are "arms of the state."  *Fitchik v. N.J. Transit*

---

[4] To bring a § 1983 claim, "a . . . plaintiff [must] prove two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

"[C]ivil claims for violations of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act" ("NJCRA") N.J.S.A. 10:6-1 *et seq.  Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 548 (D.N.J. 2013).  Because the NJCRA is "interpreted analogously to Section 1983," this Court's § 1983 analysis controls Plaintiff's NJCRA and New Jersey constitutional claims as well (Counts II, IV, and V).  *O'Toole v. Klingen*, 14-6333, 2017 WL 132840, at *5 (D.N.J. Jan. 13, 2017); *see also Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (noting that the NJCRA "was modeled after 42 U.S.C. § 1983").

*Rail Operations, Inc.*, 873 F.2d 655, 658 (3d Cir. 1989) (en banc) ("If [a defendant] is not an arm of the state, [E]leventh [A]mendment immunity will not attach.").

The Eleventh Amendment "immunize[s] an unconsenting state 'from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Id.* at 658–59 (quoting *Pennhurst*, 465 U.S. at 100 (internal quotation marks and citation omitted). A suit brought against an actor, state agency, or department that is in essence "an arm of the state" is also barred by the Eleventh Amendment. *Id.* at 658. The Eleventh Amendment does not, however, bar suits against an official in his or her individual capacity, even if the relevant actions were part of the official's governmental duties. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

A defendant is characterized as an "arm of the state," and is also entitled to immunity from suit under the Eleventh Amendment, when a judgment against it "would have had essentially the same practical consequences as a judgment against the State itself." *Fitchik*, 873 F.2d at 659. Whether a defendant is an "arm of the state" is determined by balancing three factors (the "*Fitchik* factors"): (1) whether the payment of the judgment would come from the state treasury; (2) what status the defendant has under state law; and (3) what degree of autonomy the defendant has. *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006) (citing *Fitchik*, 873 F.2d at 659). Each factor is accorded equal weight in the immunity analysis. *Karns v. Shanahan*, 879 F.3d 504, 515 (3d Cir. 2018). A defendant bears the burden to establish his entitlement to sovereign immunity. *Fitchik*, 873 F.2d at 659.

As for the first factor, the Third Circuit has observed that "'the crux of the state-treasury criterion' is not whether the state will be the principal source of any funding, but rather whether the state is 'legally responsible for the payment of [the] judgment.'" *Karns*, 879 F.3d at 515 (alteration in original) (quoting *Febres*, 445 F.3d at 233). Despite having the burden, DiLeo and

Scutari do not address the substance of the first factor, *i.e.*, they do not opine on whether the Treasury of the State of New Jersey would be liable for any judgment arising from this suit. Therefore, DiLeo and Scutari have not met their burden with respect to the first factor. *See Fitchik*, 873 F.2d at 662 (finding that "the funding factor weigh strongly against [the defendant]" when the state has no obligation to pay for the defendant's judgments); *Murphy v. Middlesex Cnty.*, No. 15-7102, 2017 WL 6342154, at *6 (D.N.J. Dec. 12, 2017) (denying Eleventh Amendment immunity because defendant's briefing did not address the first factor).

The second and third *Fitchik* factors are interrelated. *Kirkland v. DiLeo*, 581 F. App'x 111, 117 (3d Cir. 2014). The second factor requires an inquiry into "whether state law treats [a municipal judge or a municipal prosecutor] as independent, or as a surrogate for the state." *Fitchik*, 873 F.2d at 662. The third factor requires an inquiry into a municipal judge or a municipal prosecutor's "degree of autonomy" in relation to the state. The greater a defendant's autonomy, the more likely it is that he is subject to suit under 42 U.S.C. § 1983.

DiLeo has not met his burden in proving the second and third *Fitchik* factors.[6] As an initial matter, DiLeo does not dispute that: he was an employee of the City; he was appointed by the Mayor of Linden; and the Linden City Council and Mayor Gerbounka were responsible for oversight and supervision of Linden Municipal Court, as well as DiLeo. (FAC ¶¶ 3, 7, 201.) These facts suggest that DiLeo is not a "surrogate of the state" and that he has a notable degree of autonomy in relation to the State of New Jersey.

DiLeo, citing *Kagan v. Caroselli*, 30 N.J. 371, 379 (1959) and its progeny, stresses that the State has administrative control of the municipal courts. Those cases, however, are not dispositive.

---

[6] DiLeo's arguments for sovereign immunity are virtually identical to those he made in *Kirkland v. DiLeo*, 581 F. App'x. 111 (2014)—a facturally similar case against DiLeo in his official capacity as the City of Linden's municipal judge. In *Kirkland,* the Third Circuit affirmed the District Court's conclusion that DiLeo failed to meet his burden to establish his entitlement to sovereign immunity. *Kirkland*, 581 F. App'x. at 116–17.

The New Jersey statute governing the municipal courts explicitly confers onto municipalities numerous powers related to the appointment and compensation of the municipal judge and the operation and management of the municipal courts. *See* N.J.S.A. 2B:12-1 *et seq.*  Moreover, the case law since *Kagan* has evolved, and at least one other court in this District has "observed the blurry line between a municipality and its municipal court." *Kneisser v. McInerney*, No. 15-7043, 2018 WL 1586033, at *1 (D.N.J. Mar. 30, 2018) (concluding that the Municipal Court of Burlington Township can be held liable for constitutional injuries under § 1983 because the Municipal Court is an arm of the Township).  Therefore, DiLeo has not met his burden in showing that he is entitled to sovereign immunity.

Scutari has similarly failed to meet his burden in proving the second and third *Fitchik* factors.  First, like DiLeo, Scutari does not dispute Plaintiff's allegations that he was an employee of the City, was appointed by the Mayor of Linden, and was subject to the supervision and oversight of Gerbounka and the Linden City Council.  (D.E. 23 ¶¶ 4, 7, 201.)  Moreover, the cases upon which Scutari relies are inapposite and not binding on this Court.  For example, *Wright v. Borough of Buena*, No. 05-4782, 2006 WL 1644869, at *5 (D.N.J. June 12, 2006) and *State v. Clark*, 744 A.2d 109, 111 (2000) both cite to a state law provision governing *municipal courts*, N.J.S.A. 2B:12-27,[7] for the proposition that it is the State that controls municipal prosecutors.

Other provisions in the New Jersey Statutes, however, give municipalities a notable degree of control over the municipal prosecutor position.  For example, a municipality has the power to: (1) appoint municipal prosecutors; (2) extend a municipal prosecutor's term of appointment

---

[7] New Jersey state law provides that "[t]he governing body of the county or municipality *may* employ an attorney-at-law as a prosecutor, under the supervision of the Attorney General or county prosecutor, who *may* represent the State, county or municipality in any matter within the jurisdiction of the central municipal court or any other municipal court in accordance with the provisions of P.L.1999, c. 349 (C.2B:25-1 et al.)." N.J.S.A. 2B:12-27. This provision is clearly permissive—*i.e.*, a municipality is *not required* to employ a municipal prosecutor under the supervision of the State.

beyond one year; (3) determine the compensation for a municipal prosecutor; and (4) remove a municipal prosecutor from office.  *See* N.J.S.A. 2B:25-4(a)-(d); N.J.S.A. 2B:25-6(a); N.J.S.A. 2B:25-9.  Therefore, Scutari has not met his burden of showing that the second and third *Fitchik* factors weigh in his favor.

Because none of the *Fitchik* factors weigh in favor of DiLeo and Scutari, they are not entitled to sovereign immunity at this stage.  *See Kirkland*, 581 F. App'x at 117 ("The fact that Judge DiLeo failed to prove even a single *Fitchik* factor is enough to deny his motion to dismiss.").  Plaintiff's claims against Scutari and DiLeo are permitted to go forward.

### B.  Absolute Judicial Immunity (Counts I to VII)

Defendant DiLeo seeks to dismiss all claims against him on grounds of absolute judicial immunity, contending that the allegations in the FAC involve acts that are judicial actions.  DiLeo is not entitled to absolute judicial immunity because Plaintiff has sufficiently pled an exception to judicial immunity in the FAC.

Judicial immunity shields a judge, who is performing his duties, from lawsuits seeking monetary damages.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  There are, however, two exceptions to judicial immunity:  "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Mireles*, 502 U.S. at 11–12 (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)).  If the FAC contains allegations that, taken as true, sufficiently establish that either exception applies, DiLeo's motion to dismiss claims against him on grounds of absolute judicial immunity must be denied.  *See id.*; *see also Gallas*, 211 F.3d at 768–73.

The application of the first exception turns on two factors:  (1) "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge," and (2) "the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."  *Stump*, 435 U.S. at 362.

Here, the FAC sufficiently alleges numerous instances of misconduct that, taken as true, would not be functions normally performed by a judge.  For example, Plaintiff alleges that DiLeo cross-examined her at her trial, and, at her post-trial hearing, assumed the role of a prosecutor and refused to allow her or her Pastor to testify about her substantial compliance with the court-ordered anger management program.  (D.E. 23 ¶¶ 38–41.)  These acts were not functions normally performed by a judge because, as the Third Circuit explained in *Kirkland*, "DiLeo was no longer acting as a neutral arbiter of disputes, but as a prosecutor or advocate."  581 F. App'x at 115.  Nor could the parties have expected DiLeo, as the presiding judge, to participate in a criminal trial and post-trial hearing to such an extent.[8]  *See United States v. Ottaviano*, 738 F.3d 586, 595 (3d Cir. 2013) ("[A] judge must not abandon his [or her] proper role and assume that of an advocate.").

The FAC plausibly alleges that DiLeo's conduct went beyond mere legal error, to the point that DiLeo was no longer truly functioning as a judge.  Accordingly, DiLeo is not entitled to judicial immunity at this stage.

### C.  Absolute Prosecutorial Immunity (Counts I to VII)

Defendant Scutari seeks to dismiss all claims against him on grounds of absolute prosecutorial immunity.  Because Scutari has failed to show that his alleged misconduct was

---

[8] This Court does not suggest that a municipal court proceeding must incorporate all of the procedural safeguards of a felony trial, or that a judge may never question a witness.  When a judge assumes the role of a prosecutor in a trial over which he or she presides, however, that judge exceeds the scope of the judicial immunity shield. *See United States v. Wilensky*, 757 F.2d 594, 597–98 (3d Cir. 1985) (holding that trial judge's interruptions and extensive examination during both direct and cross-examination of a key defense witness "overstep[ped] the bounds of prudent judicial conduct").  The FAC adequately alleges that DiLeo did just that.

serving a prosecutorial or advocacy function associated with the judicial phase of Plaintiff's case, he is not entitled to absolute prosecutorial immunity.

While the Supreme Court has extended the defense of absolute immunity to certain prosecutorial functions, actions of a prosecutor are not per se immune to lawsuits. *See Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). When determining whether a prosecutor's conduct is entitled to absolute immunity, the inquiry must "focus upon the functional nature of the activities rather than [the prosecutor's] status." *Id.* (alteration in original) (internal quotation marks omitted). This functional test "separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work intimately associated with the judicial phase of the criminal process." *Id.* at 159–60 (internal quotation marks and citation omitted). For instance, "prosecutors are immune from claims arising from their conduct in beginning a prosecution, including soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings, presenting a state's case at trial, and appearing before a judge to present evidence." *Id.* at 160 (internal quotation marks and citations omitted). "Determining the precise function that a prosecutor is performing is a fact-specific analysis." *Id.* A defendant has the burden of showing that "the conduct triggering absolute immunity clearly appear[s] on the face of the complaint." *Id.* at 161 (alteration in original) (internal quotation marks and citations omitted).

Courts must apply a two-step analysis to determine whether a defendant is entitled to absolute immunity. *See id.* First, the court must "ascertain just what conduct forms the basis for the plaintiff's cause of action." *Id.* (internal quotation marks omitted). Second, it must "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served, to determine whether the Prosecutors have carried their burden of showing that such

12

immunity is justified for the function in question." *Id.* (internal quotation marks and citations omitted).

Using this two-step framework, this Court concludes that Scutari is not, at this stage, entitled to prosecutorial immunity. The FAC alleges that Scutari: (1) failed to appear as the municipal prosecutor at Plaintiff's post-trial hearing on January 16, 2008, and there was no other municipal prosecutor present for this hearing; (2) failed to respond or take any action in response to Plaintiff's post-trial counsel's "Motion for Reconsideration of Sentence" and request for an immediate hearing regarding Plaintiff's incarceration and a stay of Plaintiff's sentence pending appeal; (3) countenanced the practice, policy, and custom of the Linden Defendants to deny litigants the right to counsel; (4) and relinquished his role as municipal prosecutor to DiLeo and other unauthorized individuals. (D.E. 23 ¶¶ 41, 52, 57, 58, 74.) None of those acts or omissions is "intimately associated with the judicial phase of the criminal process," *Fogle*, 957 F.3d at 160, and Scutari fails to raise any persuasive arguments to the contrary. *See Buckley*, 509 U.S. at 273 ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."). Simply put, accepting as true the allegations in the FAC, this Court cannot conclude that Scutari's alleged failure to perform his prosecutorial duties falls within the category of prosecutorial function. Accordingly, Scutari is not entitled to prosecutorial immunity.

### D.  Qualified Immunity (Counts I to VII)

Defendant Scutari argues that he is shielded from liability arising from his allegedly "improper transfer" of prosecutorial duties to DiLeo and other unauthorized individuals. (D.E. 67 at 30). Scutari is not entitled to qualified immunity, however, because the FAC adequately alleges

that Scutari's conduct violated Plaintiff's constitutional rights, which were clearly established at the time when the alleged injuries occurred.

The purpose of qualified immunity is to hold public officials accountable where their power is used "irresponsibly," and to shield them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, (2009). It is meant to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[T]he burden of pleading a qualified immunity defense rests with the defendant, not the plaintiff." *Thomas v. Indep. Twp.*, 463 F.3d 285, 293 (3d Cir. 2006).

To determine whether qualified immunity applies, courts must engage in a two-part inquiry: (1) do the allegations in the complaint, viewed in a light most favorable to the party asserting the injury, show that defendant's conduct violated a constitutional right, and (2) was the constitutional right clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232. Courts have the discretion to consider either prong of the two-part analysis first. *Id*. at 236.[9]

A right is "clearly established" when at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks, alterations, and citation omitted). The Third Circuit has made clear that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas*, 463 F.3d at 291.

---

[9] Qualified immunity under the NJCRA "tracks the federal standard." *Brown v. State*, 230 N.J. 84, 98 (2017) (holding that determining whether a governmental official is entitled to qualified immunity requires a two-step inquiry: (1) whether "the facts, taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a constitutional right"; and (2) whether "that constitutional right was clearly established at the time that defendant acted").

The FAC alleges a violation of constitutional rights that have long been recognized by the courts in this circuit. *See e.g.*, *Kneisser*, 2018 WL 1586033, at *6 (holding that a defendant's right to counsel is "well established" by the Sixth Amendment); *Schneyder*, 653 F.3d at 330 ("[A]n individual in custody has a constitutional right to be released from confinement after it was or should have been known that the detainee was entitled to release.") (internal quotation marks and citation omitted). Scutari's counterarguments are unavailing and/or cannot be resolved at this nascent stage of the litigation.

As to the second prong, Scutari avers, in conclusory fashion, that "it is clear to a reasonable prosecutor . . . that his conduct was not unlawful in the situation he confronted" (D.E. 67 at 30) but does not explain *why* a reasonable prosecutor would not have thought or known that Scutari's alleged knowing relinquishment and transfer of his prosecutorial duties to DiLeo and Estabrooks violated Plaintiff's constitutional rights. This Court is not aware of, and Scutari has not cited any, state law that permits a municipal judge to both preside over a case and function as the prosecutor in the courtroom.

Taking Plaintiff's allegations as true, Scutari's alleged knowing participation in enabling a practice, policy, and custom to violate criminal defendants' constitutional rights in the Linden Municipal Court is not entitled to qualified immunity at this stage.

### E.  Scutari's Personal Involvement (Counts I to VII)

Defendant Scutari argues that all claims against him should be dismissed because Plaintiff fails to sufficiently plead any personal involvement. Scutari's argument is unpersuasive because the FAC sufficiently alleges his personal involvement in violating Plaintiff's constitutional rights.

"An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of

*respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (internal quotation marks, alteration, and citation omitted).  The Third Circuit has held that "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Id.* (citation omitted).

Here, Plaintiff alleges facts that, if proven, would show Scutari's personal involvement in the violation of her constitutional rights in her prosecution, conviction, and subsequent imprisonment.  The FAC pleads with sufficient particularity that:  (1) Scutari relinquished his prosecutorial duties to DiLeo and other unauthorized individuals by maintaining a custom, practice, and/or policy of not appearing in the Linden Municipal Court when it was in session; (2) Scutari knew or should have known this custom, practice, and/or policy enabled and perpetuated the violation of constitutional rights of individuals appearing before the Linden Municipal Court; (3) Scutari did not appear as the municipal prosecutor at Plaintiff's trial and post-trial hearing and failed to respond or take any action to respond to Plaintiff's motions while she was incarcerated; and (4) as a result of Scutari's knowing action and omission, Plaintiff was deprived of her federal and state constitutional rights.  (D.E. 23 ¶¶ 41, 52, 57, 59, 74, 84, 120, 124, 125, 127–30.)  These allegations sufficiently state the conduct, time, place, and persons responsible.  Thus, the FAC adequately alleges Scutari's personal involvement.

### F.  Claims Against Gerbounka in His Official and Individual Capacity (Counts I to VIII)

Defendant Gerbounka seeks dismissal of all counts against him in his individual and official capacity, claiming he did not have any personal involvement or knowledge in Plaintiff's case nor did he have supervisory authority over Scutari or DiLeo.   (D.E. 67 at 31–34.)  Gerbounka's contentions miss the mark.

Starting with claims against Gerbounka in his official capacity, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Allegations of "actual knowledge and acquiescence" must be made with "appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

As an initial matter, Plaintiff has sufficiently pled that Gerbounka had supervisory authority over DiLeo and Scutari. As discussed earlier in this Opinion, DiLeo and Scutari are not "arms of the state" and that the City of Linden and Gerbounka had at least some control over DiLeo and Scutari. In addition, public records[10] show that DiLeo and Scutari were both removed from their positions by the Mayor of Linden and the Linden City Council, supporting the conclusion that Gerbounka and the City had supervisory authority over DiLeo and Scutari. (*See* D.E. 68 at 17 n.8.)

Plaintiff also has sufficiently alleged knowledge and acquiescence on the part of Gerbounka. In particular, Plaintiff claims that, as the Mayor of Linden, Gerbounka: (1) was responsible for oversight and supervision of Linden Municipal Court, as well as DiLeo and Scutari; (2) had notice and/or knowledge of the improper conduct and practices of DiLeo and Scutari, and that their improper conduct and practices had led to the wrongful conviction, illegal sentencing and incarceration of numerous other individuals appearing before the Linden Municipal Court, including Plaintiff; (3) took no remedial action to prevent or address DiLeo's and Scutari's

---

[10] In ruling on a motion to dismiss, "a district court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("[J]udicial proceedings constitute public records and that courts may take judicial notice of another court's opinions.").

improper conduct or practice; and (4) acted in concert with and conspired amongst the other Linden Defendants to conduct municipal court proceedings in a manner to deprive litigants, including Plaintiff, of their constitutional rights.  (D.E. 23 ¶¶ 7, 122–23, 136, 201–04, 215–16.)  Therefore, Plaintiff has stated a supervisory claim against Gerbounka in his official capacity.

Likewise, Plaintiff has stated claims against Gerbounka in his individual capacity. "Personal involvement on the part of a defendant in the alleged wrong is required in § 1983 actions" and "can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207.  As discussed previously, Plaintiff has sufficiently pled knowledge and acquiescence, thereby satisfying the personal involvement element.  For the forgoing reasons, Gerbounka is not entitled to dismissal of claims against him in his official and individual capacity.

### G.  Municipal (*Monell*) Liability (Count VIII)

The City seeks to dismiss Plaintiff's *Monell* claim for governmental entity liability under § 1983.  The City's argument is without merit because Plaintiff has sufficiently alleged that her constitutional injuries were the result of the City's policies, customs, or practices.

In a federal civil rights action, municipal liability may not be founded on the theory of *respondeat superior*.  *Monell*, 436 U.S. at 691.  Instead, a government entity may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694; *accord Bielevicz v. Dubinon*, 915 F.2d 845, 849–50 (3d Cir. 1990). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur*

*v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  Custom, on the other hand, can be demonstrated "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  *Bielevicz*, 915 F.2d at 850 (citations omitted).

Here, Plaintiff alleges that the City is liable because "[t]he actions of [the Linden Defendants] . . . were not an isolated incident but rather a long-standing custom, policy and practice by the Linden Defendants to deny the accused their rights."  (D.E. 23 ¶ 73.)  Specifically, DiLeo allegedly testified to the Supreme Court of New Jersey's Advisory Committee on Judicial Conduct that he "relied upon the Court's prior practice" in denying counsel to defendants and committing other due process violations.  (*Id.*)  Further, without the benefit of discovery, Plaintiff cites similar misconduct in other cases in front of the Linden Municipal Court, including the criminal of prosecution of the plaintiffs in *Kirkland*, 581 F. App'x at 113.  (*Id.* ¶¶ 95–118.)  As stated previously in this Opinion, Plaintiff has sufficiently alleged that Gerbounka had knowledge of and acquiesced in Scutari's and DiLeo's improper practices, which led to the violation of the constitutional rights of individual defendants appearing before the Linden Municipal Court, including Plaintiff.

At the motion to dismiss stage, these allegations suffice to set forth a plausible claim that the City of Linden tacitly endorsed a practice, policy, or custom of denying defendants their constitutional rights.  *See Kirkland v. DiLeo*, No. 12-1196, 2013 WL 1651814, at *7 (D.N.J. Apr. 15, 2013), *aff'd*, 581 F. App'x 111 (3d Cir. 2014) (denying motion to dismiss *Monell* claims against the City because plaintiffs alleged that "[t]he severe and pervasive Constitutional violations were the long standing practice and policies of the City of Linden").  Therefore, the City is not entitled to dismissal of Plaintiff's *Monell* claim.

### H.  Conspiracy Claim under § 1985 and State Common Law (Counts VI and VII)

The Linden Defendants argue that Plaintiff's conspiracy claims should be dismissed because the factual allegations in the FAC are insufficient to state a claim.  This argument is unpersuasive because Plaintiff has sufficiently pled the elements of a conspiracy claim.

Section 1985 permits a plaintiff to bring a claim that two or more people have acted together to deprive him of his civil rights.  42 U.S.C. § 1985(3).  To establish a § 1985 conspiracy claim, a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29, (1983)).  Section 1985(3), however, does not create any substantive rights, but permits individuals to enforce substantive rights against conspiring private parties.  *See Marino v. Bowers*, 657 F.2d 1363, 1371 (3d Cir. 1981).

The allegations in the FAC sufficiently "raise a right to relief above the speculative level" to withstand a motion to dismiss.  (D.E. 23 ¶¶ 201–02); *Twombly,* 550 U.S. at 555 (internal quotation marks omitted).  In *Kirkland*, the Third Circuit held that the allegations, which were similar to those in Plaintiff's FAC, were sufficient to state a conspiracy claim under § 1985.  *See Kirkland*, 581 F. App'x at 118–19.  Plaintiff's allegations—by specifically alleging the requisite elements of who was involved in the conspiracy, when the conspiracy occurred and what the conspiracy entailed—go even further than those pled in *Kirkland*.

As for Plaintiff's common law conspiracy claim, its viability will depend on the viability of the federal claims because this Court's exercise of supplemental jurisdiction depends on the

jurisdictional and substantive merits of the federal claims.[11]  *See* 28 U.S.C. § 1367.  Plaintiff has adequately pled conspiracy claims under both § 1985 and state common law.  Accordingly, this Court denies the Linden Defendants' motion to dismiss Plaintiff's § 1985 and common law conspiracy claims.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Linden Defendants' Motion to Dismiss the FAC is **DENIED**.  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
           Parties

---

[11] Common law civil conspiracy has "similar requirements" as § 1985(3) conspiracy.  *Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 610 (D.N.J. 2010); *see also Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *9 (D.N.J. June 29, 2015) (requiring a complaint alleging New Jersey common law conspiracy to include "the who, what, when, where, and how of the conspiracy").  The elements of common law civil conspiracy are:  "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages."  *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003) (citations omitted).